Phillip Duncan BRONSON, Plaintiff,

v.

UNITED STATES, Defendant.

No. 91–1359 T.

United States Court of Federal Claims.

July 30, 1993.

David S. Grossman, Seattle, WA, for plaintiff.

Thomas D. Sykes, Washington, D.C., with whom was Acting Asst. Atty. Gen. James A. Bruton, and Mildred L. Seidman, for defendant.

**ORDER**

MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross-motions for summary judgment. Oral argument is deemed unnecessary. For the reasons set forth below, the court grants defendant's motion for summary judgment, and denies plaintiff's cross-motion for summary judgment.

**FACTS**

Plaintiff Phillip Duncan Bronson filed suit on August 15, 1991. This case was originally assigned to Judge Andewelt. On May 14, 1993, it was reassigned to Judge Tidwell pursuant to RCFC 77(f).

On November 8, 1983, the United States Internal Revenue Service (IRS) notified plaintiff that it proposed to assess penalties against him under section 6672 of the Internal Revenue Code for several quarters of unpaid taxes. 26 U.S.C. § 6672 (1988). These penalties were in response to unpaid withheld income and Federal Insurance Contributions Act (FICA) taxes. *Id.* The taxes were withheld from the employees of Re–New Manufacturing Co., Inc., of Everett, Washington. The penalties equal the total unpaid withheld income and FICA tax-

es that the government was unable to collect from Re–New. Such penalties are to be assessed and collected like tax. *Id.* § 6671(a). It is uncontested that plaintiff was the responsible person for such taxes. *Id.* § 6672(a).

On March 15, 1984, plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington. 11 U.S.C. § 301 (1988). In April 1984, the IRS assessed penalties against plaintiff totaling $49,610.14. The penalties related to a number of taxable quarters ending in tax years 1981, 1982, and 1983. The IRS made the assessments in violation of the automatic stay provision of the Bankruptcy Code. *Id.* § 362(a). The IRS timely filed notice with the bankruptcy court of its unsecured priority claim. In its Proof of Claim, the IRS sought only the penalties that are at issue in this case.

On October 4, 1984, the bankruptcy court ordered that the Chapter 11 reorganization proceeding be converted to a liquidation case under Chapter 7 of the Bankruptcy Code. On February 15, 1985, the bankruptcy court entered a Discharge of Debtor Order, and closed the case on March 19, 1985. At no time did either party or the court raise the issue of the validity of the assessments, or object to defendant's Proof of Claim filed with the bankruptcy court. The tax liabilities at issue were nondischargable under 11 U.S.C. § 523 and, therefore, excepted from the bankruptcy court's discharge order. Aside from making the now-disputed assessments, the IRS made no attempts to collect the penalties while the stay was in force.

On February 20, 1986, defendant filed a Notice of Federal Tax Lien against plaintiff for the assessments at issue. In April 1986, plaintiff entered into a signed installment agreement with defendant for the assessments, agreeing to pay the IRS a total of $44,684.20 plus accrued interest. On May 6, 1986, plaintiff signed a Tax Collection Waiver which extended the three year statute of limitations, thereby giving the IRS until December 31, 1996 to sue for

collection of the assessments. *See* 26 U.S.C. § 6501(c)(4) (1988).

On February 24, 1989, plaintiff's attorney requested that defendant serve notice of levy on the escrow agent of plaintiff's 401(k) account. Plaintiff desired the levy in order to fully satisfy the remaining tax obligation without the imposition of a ten percent penalty imposed by law upon early withdrawal of funds from retirement accounts. *Id.* § 72(q) (1988). Plaintiff paid all tax liabilities and interest before commencing this suit.

By October 1987, plaintiff became aware that defendant's violation of the stay might provide a basis for avoiding the assessments. However, plaintiff chose to postpone filing suit until after the last of the three statute of limitations periods had run. Although plaintiff had signed a waiver allowing collection of the assessments, the three year statute of limitations periods had run with respect to the ability of the IRS to assess the penalties. *Id.* § 6501(a).

Plaintiff filed his complaint on August 15, 1991, requesting refund of the penalties and interest assessed against him in the amount of $75,233.94 plus interest. Plaintiff contended that because the penalties were assessed in violation of the Bankruptcy Code's automatic stay provision, the assessments are void. In addition, the IRS cannot now correct its mistake since the statute of limitations periods for reassessing the penalties have run. Therefore, plaintiff argued, all payments made toward the assessments were overpayments of tax and should be refunded.

Defendant argued that had plaintiff contested the validity of the assessments prior to the end of each statute of limitations period, the IRS could have abated the assessments and reassessed the penalties, or commenced legal actions to collect the penalties. Therefore, defendant contended, plaintiff should be equitably barred from collecting a refund even if this court holds the assessments to be void.

**1.** Section 362 reads in pertinent part:
   (a) [A] petition filed under ... this title operates as a stay, applicable to all entities, of—
   ....

## DISCUSSION

The sole issue before the court today is whether plaintiff is entitled to a refund of taxes paid pursuant to assessments made in violation of the Bankruptcy Code's automatic stay provision.

### I. *Summary Judgment is Appropriate When There is no Genuine Issue of Material Fact.*

█ Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987) (citing *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149 (Fed.Cir. 1986)). In considering a motion for summary judgment, the evidence must be viewed, and inferences drawn, in a light most favorable to the non-moving party. *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985). There are no genuine issues of material fact remaining in this case. The question is one of law. Therefore, this case is appropriately decided by summary judgment.

### II. *Assessments Made in Violation of the Bankruptcy Code's Automatic Stay are Void.*

█ It is undisputed that the IRS's tax assessments violated the Bankruptcy Code's automatic stay provision. 11 U.S.C. § 362(a)(6) (1988).[1] Plaintiff claims that the assessments are void and therefore, he had no responsibility to contemporaneously object to the assessments and is now entitled to a full refund of the amounts paid.

Defendant asserts that the violation of the automatic stay makes the assessments voidable rather than void, and that because

   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
   11 U.S.C. § 362(a)(6) (1988).

plaintiff failed to petition the bankruptcy court to void the assessments, the assessments remain valid, and plaintiff is not entitled to a refund. While defendant has adequately demonstrated that there is a split of authority on whether the assessments are void or voidable, both the overwhelming weight of authority and the objectives of the automatic stay support plaintiff's argument that the assessments are void, not voidable.[2]

### A. Legal Authority

■ Defendant cites *Lehigh Portland Cement Co. v. United States*, 30 F.Supp. 217, 90 Ct.Cl. 36 (1939), as its primary source of judicial authority supporting the proposition that erroneous assessments are voidable rather than void. However, the policies of the Bankruptcy Code's automatic stay provision are very different from those of the sixty day stay period in *Lehigh*. The court there was ruling on a violation of section 274(a) of the Revenue Act of 1926:

> Within 60 days after [the deficiency notice] is mailed ... the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency.... [N]o distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60–day[s].... [T]he making of such assessment or the

beginning of such proceeding ... during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

Revenue Act of 1926 § 274(a), 44 Stat. 55 (1926), *quoted in Lehigh*, 30 F.Supp. at 222. The prohibitory period at issue in *Lehigh* was intended to give the taxpayer a time period to object to the validity of the tax before the collection period commenced. "The correctness of the amounts [was] not in question" in *Lehigh. Lehigh*, 30 F.Supp. at 222. Therefore, there was no policy reason to void the premature assessment. In addition, in *Lehigh*, the statute provided a specific remedy for violation of the stay. The statute specifically placed the burden on the taxpayer to enjoin the IRS by action in the proper court.[3]

### B. Automatic Stay Objectives

■ The policies behind the Bankruptcy Code's automatic stay are best served by holding that acts in violation of the stay are void. The automatic stay provision of the Bankruptcy Code has three main objectives: (1) it protects debtors from harassment by creditors during the bankruptcy; (2) it protects the claims and priorities of all the creditors; and (3) it provides debtors an opportunity to attempt to reorganize their affairs. H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6297–98, *cited with approval in In re Timbers of Inwood*

---

2. The Fifth Circuit has repeatedly held that violations of the automatic stay are voidable. *See Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990); *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir.1989). However, the First, Second, Third, Sixth, Ninth, Tenth, and Eleventh Circuits have all held that violations are void *ab initio. Schwartz v. United States*, 954 F.2d 569 (9th Cir.1992); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371 (10th Cir. 1990); *Smith v. First American Bank, N.A.*, 876 F.2d 524 (6th Cir.1989); *In re Ward*, 837 F.2d 124 (3d Cir.1988); *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.*, 835 F.2d 427 (2d Cir. 1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982); *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir.1982). In this Court there is no binding precedent. Neither the Supreme Court, the Court of Appeals for the Federal Circuit, nor

the Court of Claims has addressed this specific issue.

3. This Court is not the proper forum in which to seek an injunction. In 1868, the Supreme Court held that "the only judgments which the Court of Claims [is] authorized to render against the government ... are judgments for money found due from the government to the petitioner." *United States v. Alire*, 73 U.S. (6 Wall.) 573, 575, 18 L.Ed. 947 (1867). After the enactment of the Tucker Act, the Supreme Court reaffirmed this view of limited jurisdiction. "In *United States v. Jones*, 131 U.S. 1 [9 S.Ct. 669, 33 L.Ed. 90] [(1888)], [the Supreme Court] held that the passage of the Tucker Act in 1887 had not expanded [the Court of Claims'] jurisdiction to equitable matters." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1968) (holding that the Court of Claims has no jurisdiction to order declaratory judgments).

*Forest,* 793 F.2d 1380 (5th Cir.1986), *aff'd on other grounds sub nom. United Sav. Assoc. v. Timbers of Inwood Forest Assoc.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The debtor should not be required to fight off creditors while the bankruptcy stay is in force. The protection against such attacks is one of the main purposes of the stay.[4] As the Ninth Circuit has stated, "if violations [are] voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions. If violations are void, however, debtors are afforded better protection and can focus their attention on reorganization." *Schwartz v. United States,* 954 F.2d 569, 571 (9th Cir.1992). Thus, both legislative history and case law support the conclusion that acts in violation of the stay should be held void.

### III. *The IRS is Bound by the Automatic Stay of the Bankruptcy Code.*

■ Defendant argues that it is not bound by the automatic stay. In support of this argument, defendant points to the fact that Congress has made many tax liabilities nondischargable in bankruptcy. In effect, defendant argues that because the penalties were due and were nondischargable, it could ignore the procedural rules of the automatic stay. This, however, in no way exempts the IRS from compliance with the automatic stay. The Bankruptcy Code is very specific: "all entities" are prohibited from attempting collection against the debtor. 11 U.S.C. § 362(a). Otherwise, "inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors." H.R.Rep. No. 595, *reprinted in* 1978 U.S.C.C.A.N. at 6298. The Code also specifically prohibits making assessments during the stay. 11 U.S.C. § 362(a)(6).

■ Congress has provided the IRS, like other creditors, a method for making post-petition collections. *See id.* § 362(d). A creditor may obtain relief from a stay, however, the creditor has the burden of properly obtaining relief from the bankruptcy court. *Id.* It is not the debtor who must show that each attack on the stay is invalid. *See In re Williams,* 124 B.R. 311, 317–18 (Bankr.C.D.Cal.1991). "[A]bsent affirmative relief from the bankruptcy court, violations of the stay are void." *Schwartz,* 954 F.2d at 573.

### IV. *The Assessments in This Case are Not Void Due to Plaintiff's Actions.*

■ Although violations of the automatic stay are usually void, there are exceptions. See, e.g., 11 U.S.C. § 549(a) (1988), which gives the trustee power to choose to "avoid" transfers of property that took place in violation of the bankruptcy. Since the power given to the trustee is discretionary, such transfers are voidable, not void. The present case is one of those exceptions, not because the IRS is immune to the stay, but because of the affirmative acts of plaintiff.

■ Debtors may not rely on a violation of the stay to avoid obligations when, at the time of the violation, they remained "stealthily silent". *In re Smith Corset Shops, Inc.,* 696 F.2d 971, 977 (1st Cir. 1982). Debtors may not be permitted to exploit the automatic stay provision to their unfair advantage. *See Smith v. First American Bank, N.A.,* 876 F.2d 524, 527 (6th Cir.1989).

Therefore, the court must determine whether plaintiff has taken advantage of the automatic stay provision and is now asking the court to relieve him from liability thereunder. A point by point analysis is appropriate "to insure that there is no suffocation of the stay's intended policy." *In re Cinematronics, Inc.,* 111 B.R. 892, 901 (Bankr.S.D.Cal.1990).

---

**4.** "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97.

Plaintiff signed an installment contract with the IRS agreeing to pay $44,684.20 plus accrued interest. By signing the installment contract, plaintiff received time to raise the money. Absent the contract, the IRS would have immediately commenced legal action against plaintiff for the full amount of the debt. Plaintiff wrote to the IRS at least twice, before the end of the statute of limitations periods, stating that the correct amount of the assessments was slightly less than the amount the IRS had assessed. However, at no time prior to this court action did plaintiff assert that he did not owe the penalties in question.

Plaintiff also signed a waiver that gave defendant additional time to collect the assessments. While not explicitly stated on the waiver form, the purpose of the Tax Collection Waiver is to allow the IRS to protect itself against statutory deadlines while allowing taxpayers increased time to meet their tax obligations. By signing the waiver, plaintiff agreed to allow the IRS to collect, by levy or by court proceeding, any unpaid balance of the assessments until December 31, 1996. Without such a waiver, the IRS would have been forced to take immediate legal action to avoid the statutory deadline. This would have deprived the taxpayer of additional time he could otherwise have used to raise sufficient funds for the tax payments.

It is incongruous for plaintiff to agree to extend statutory periods of limitation for the collection of assessments and then to argue that statutory periods of limitation bar the collection of those assessments because they were made at the wrong time. The IRS could have commenced legal action at the end of the original period of limitation for the amount of the penalties, with or without a valid assessment, but did not commence such action because plaintiff executed the waiver.

Moreover, plaintiff asked the IRS, in writing, to place a lien on the last of the bankruptcy estate's assets, his home. Plaintiff also asked the IRS to place a lien on his 401(k) account so that he could make tax payments from the funds without the regular ten percent penalty for early withdrawal. 26 U.S.C. § 72(q) (1988). Plaintiff, by acting in this manner, availed himself of the assessments which he now contends should be held void. He also knowingly waited to file his claim until after the last of the statutory periods for assessment had run and the IRS could no longer correct its mistake.

Had plaintiff filed suit earlier, the IRS could have abated the erroneous assessments and reassessed, or sued for collection. Defendant has been disadvantaged by plaintiff's willful delay in voicing objection to the assessments.

■ The court finds that plaintiff's actions are sufficient to negate the policies of the automatic stay. See *In re Matthews*, 739 F.2d 249, 251 (7th Cir.1984), where the court held that when the debtor bears some responsibility for creating the problem, equitable considerations can create an exception to the general rule of voidness and render him subject to the assessments. Therefore, the assessments in violation of the stay, under these specific circumstances, were not void, but voidable. Even though the assessments were not void, plaintiff could have petitioned the bankruptcy court to void them at any time during the bankruptcy proceedings. However, in the absence of such petition by plaintiff, and in light of the other circumstances enunciated above, this court must hold that the assessments were proper.

V. *Plaintiff Must Also Demonstrate That He Has Made an Overpayment Before He is Entitled to Any Refund.*

■ Plaintiff must also demonstrate that he has made an overpayment before this court can order a refund. Plaintiff became liable for the penalties when he failed "to collect, truthfully account for, and pay over [the required taxes]." 26 U.S.C. § 6672(a) (1988). Plaintiff has never disputed that he owed the taxes. As a result, he is not entitled to a refund for payments against taxes which he owed, even though never properly assessed.

The United States Court of Claims has stated that "it is not necessary that a tax be assessed before it can be legally collected. If a tax is due and is collected without assessment, it can not be recovered on that ground alone". *Muir v. United States*, 3 F.Supp. 619, 621, 78 Ct.Cl. 150 (1993). "The [IRS] is free to sue to obtain a judgment for a tax liability even without an assessment."[5] *Anglemyer v. United States*, 115 B.R. 510, 513–14 (D.Md.1990). The Supreme Court has stated:

> While no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax.... Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

*Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932).

Defendant argued that even if the court holds that the assessments are void, plaintiff should be prohibited from collecting a refund on equitable principles of estoppel, waiver, or laches. However, since the assessments were not void, and plaintiff failed to show an overpayment, the court need not address the equitable defenses.

### CONCLUSION

The court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment for the reasons stated above. The Clerk of the Court is directed to enter judgment in favor of defendant. Costs.

**IT IS SO ORDERED.**

---

**5.** Plaintiff's claim that judicial collection is seldomly used by the IRS is without legal significance. The fact that a right is seldomly used does not forbid its use in the future. The Internal Revenue Code specifically provides for collection by legal proceeding. *See* 26 U.S.C. § 6501(a) (1988).