Phillip Duncan BRONSON, Plaintiff-Appellant,

v.

UNITED STATES, Respondent.

No. 93-5207.

United States Court of Appeals, Federal Circuit.

Jan. 26, 1995.

---

1574

David S. Grossman, LeSourd & Patten, P.C., Seattle, WA, argued, for plaintiff-appellant. With him on brief was Robert M. McCallum.

Teresa Milton, Dept. of Justice, Washington, DC, argued, for respondent. With her on brief were Loretta C. Argrett, Asst. Atty. Gen., and Gary R. Allen and Kenneth L. Greene. Of counsel was Alice L. Ronk.

Before RICH, NIES, and MAYER, Circuit Judges.

Opinion for the Court filed by Circuit Judge RICH. Additional Views filed by Circuit Judge NIES. Dissenting opinion filed by Circuit Judge MAYER.

RICH, Circuit Judge.

Phillip Duncan Bronson (Bronson) appeals the August 5, 1993, judgment of the United States Court of Federal Claims (CFC) granting the United States' (government's) motion for summary judgment and denying Bronson's cross-motion for summary judgment thereby dismissing Bronson's complaint for a refund of penalties assessed pursuant to section 6672 of the Internal Revenue Code of 1986, 26 U.S.C. § 6672 (1988). The CFC decision is reported at *Bronson v. United States,* 28 Fed.Cl. 756 (1993). We *affirm.*

## BACKGROUND

This is a tax case. The material facts of this case are not in dispute. On November 8, 1983, the Internal Revenue Service (IRS) notified Bronson that it proposed to assess penalties against him pursuant to 26 U.S.C. § 6672 (1988) (hereinafter § 6672). Section 6672 imposes a penalty on any person responsible for collecting and paying over to the IRS income tax withholding and employee FICA tax amounts who willfully fail to do so. These penalties are in the form of a "100% penalty." [1]

The proposed assessment of penalties was equal to the amount withheld from the wages of employees of Re–New Manufacturing Co., Inc. (Re–New) of Everett, Washington, for taxable periods ending September 30, 1981; March 31, 1982; June 30, 1982; September 30, 1982; December 31, 1982; and March 31,

---

[1] These penalties are now referred to as "trust fund penalties." However, they are assessed and collected as a tax. 26 U.S.C. § 6671(a) (1988).

1983. During these periods, Bronson was an officer, stockholder, and the general manager of Re–New with signature authority for the company's operating account. There is no dispute that Bronson is a "responsible person" under the statute. The penalty totaled $49,610.14.

Bronson twice attempted to administratively appeal the proposed assessment but the IRS considered the appeals invalid because Bronson failed to state any reasons for his contention. On February 6, 1984, the IRS recommended that the proposed assessment be made.

On March 15, 1984, Bronson filed a Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Western District of Washington. The IRS acknowledged that it was notified of this filing. However, one month after Bronson filed the bankruptcy petition, the IRS finally assessed the 100% penalty that was subject of the prior notices.[2] It is agreed by both parties that the assessment violated the Bankruptcy Code's automatic stay provision, section 362(a)(6). 11 U.S.C. § 362(a)(6) (1988). However, the parties stipulated that the IRS did not willfully violate the terms of the automatic stay.[3] Thereafter, the IRS filed a proof of claim, reflecting the penalties assessed pursuant to § 6672, in Bronson's bankruptcy proceeding. The proof of claim notified the bankruptcy court that the IRS has a claim against Bronson in the amount of $49,610.14.

On August 20, 1984, Bronson wrote to the IRS notifying it of a pending sale of property "with the thought in mind that you [the IRS] might wish to file a lien prior to sale" because he was converting from Chapter 11 to Chapter 7, a liquidation proceeding rather than a reorganization proceeding. Bronson stated that this property was the only re-

maining asset available to satisfy the claim in bankruptcy. Bronson also stated: "In the absence of this lien please let me know how this claim might be settled."

On October 4, 1984, the bankruptcy court did in fact convert Bronson's case to a Chapter 7 liquidation proceeding. At no time did either party or the court raise the issue of the validity of the IRS assessment, raise the issue of violation of the automatic stay, or object to the IRS's proof of claim that was filed with the bankruptcy court. Nor did the IRS place or perfect a lien on any of Bronson's property.[4]

On February 15, 1985, the bankruptcy court entered an Order discharging Bronson from all debts dischargeable under the Bankruptcy Code. The 100% penalty, however, was not discharged under the Order because the tax liabilities at issue are nondischargeable under 11 U.S.C. § 523 (1988). The IRS's claim, therefore, was excepted from the bankruptcy court's discharge order.

The IRS did not abate the assessment nor did it reassess the penalty after the automatic stay was lifted following the dismissal of the bankruptcy case. However, a Notice of Federal Lien was filed by the IRS against Bronson on February 20, 1986. On April 14, 1986, Bronson and the IRS entered into an Installment Agreement to pay off the penalty plus interest at a rate of $500 per month, later reduced to $300 per month. On April 28, 1986, Bronson signed a waiver extending the statute of limitations for the IRS to collect the penalty to December 31, 1996. The agreement was perfected by the responsible agent of the IRS on May 6, 1986.

Between March 26, 1986, and April 5, 1989, Bronson made payments to the IRS totaling $75,233.94, of this amount, $64,194.12 was paid to the IRS after May 17, 1988. Bronson also requested the IRS to place a lien on his

---

**2.** The assessment (Form 2749) was signed by the revenue officer on February 6, 1984 and by the responsible reviewer on March 19, 1984. However, the "assessment date" is stamped April 30, 1984.

**3.** Bronson could have sought damages if the IRS had willfully violated the stay. 11 U.S.C. § 362(h) (1988).

**4.** It was not necessary for the IRS to place or perfect a lien on Bronson's property because the

home and on his section 401k account[5] to enable him to pay a larger portion of the penalty as well as to improve his financial position.

Bronson was not aware that the IRS's violation of the stay might provide a basis for avoiding the assessment until October 1987.[6] Although Bronson had signed a waiver allowing collection of the assessment, Bronson waited until he thought the statute of limitations periods for assessment had run, thus eliminating the possibility that the IRS could reassess the penalties if, in fact, the April 30, 1984 assessment was without force and effect.[7]

On August 31, 1988, Bronson filed a claim for refund[8] with the IRS seeking return of all amounts paid with respect to the penalty. Bronson asserted, for the first time, that the assessment was void because it was made in violation of the automatic stay. The IRS denied Bronson's claim.

Bronson timely filed a complaint in the CFC. Thereafter, both parties filed motions for summary judgment. The government's position was that a tax assessment, made in violation of the automatic stay is not void, but merely voidable, and because Bronson never challenged his liability on the merits, there was no overpayment of tax and, therefore, he is not entitled to a refund. The government also asserted that Bronson's refund claim was barred by the doctrines of waiver, estoppel and/or laches[9]; therefore, even if the assessment was found to be void, Bronson

would be equitably barred from collecting a refund. The CFC granted the government's motion for summary judgment and denied Bronson's cross-motion. Bronson appeals.

## ANALYSIS

■ On appeal of a grant of summary judgment, we independently determine whether there are any genuine issues of material fact, and if not, whether the court erred either in interpreting the governing law or in applying the law to the facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Allstate Ins. Co. v. United States,* 936 F.2d 1271, 1273 (Fed.Cir.1991).

■ There are no issues of material fact. The issues here are whether the violation of the automatic stay renders the assessment void, therefore without force or effect, or, if the assessment is voidable and here valid, because Bronson made no attempt to have the assessment voided in bankruptcy, and, whether Bronson is entitled to a refund for overpayment if the assessment is held to be void.

In its opinion, the CFC initially stated that "both legislative history and case law support the conclusion that acts in violation of the stay should be held void." However, the CFC ultimately held that the assessment, made in violation of the stay, under these specific circumstances, was not void but voidable. The CFC concluded that "even though

100% penalty is non-dischargeable in bankruptcy. 11 U.S.C. § 523 (1988).

5. Bronson sought the levy to fully satisfy the remaining obligation without the imposition of a ten percent penalty imposed by law for early withdrawal of funds from retirement accounts.

6. Bronson became aware that the violation of the automatic stay may render the assessment void from his "tax advisor" R.D. Pilskog via Bronson's attorney. Pilskog also noted that the IRS still had time to reassess some of the taxes, but it was suggested that any requests for refund be held back until the time for the IRS to assess the penalties had expired. It should be noted that Pilksog had been an IRS employee who had responsibilities associated with Bronson's bankruptcy matter.

7. Here, there would be three separate "statutes of limitations," one for each of the three years

that the withholding taxes were not paid, 1981, 1982, and 1983. The statute of limitations for assessment is generally three years. 26 U.S.C. § 6501(a) (1988). The filing of a petition for bankruptcy, however, tolls the running of the statute of limitations on assessment and collection. 26 U.S.C. § 6503(i) (1988).

8. Bronson paid all liabilities and interest before commencing this suit in the CFC. However, due to the derivative nature of the 100% penalty, Bronson was not required to pay the entire amount before filing for a refund. *Flora v. United States,* 362 U.S. 145, 171 n. 37, 80 S.Ct. 630, 644 n. 37, 4 L.Ed.2d 623 (1960).

9. These equitable defenses were not addressed by the CFC, therefore, they will not be addressed here on appeal.

the assessment was not void, Bronson could have petitioned the bankruptcy court to void them at any time during the bankruptcy proceedings." However, in the absence of such petition by Bronson, and in light of the equitable considerations enunciated by the court, the CFC held that the assessment was proper.

The CFC has confused, as have many courts before it, the use of "void" and "voidable." Once a petition in bankruptcy has been filed, 11 U.S.C. § 362(a)(6) (1988), the "automatic stay" provision, bars assessment against the bankrupt of any claim that arose before the commencement of the bankruptcy proceeding.

Section 362 reads in pertinent part:

(a) ... petition filed under ... this title operates as a stay, applicable to all entities, of—

. . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a)(6) (1988).

It is undisputed that the IRS tax assessment [10] violated the Bankruptcy Code's automatic stay provision, specifically, 11 U.S.C. § 362(a)(6) (1988). While Congress specified what actions violate an automatic stay as well as exceptions under § 362(b), the consequent validity of the violative actions are not statu-torily defined. This issue is of first impression in this court. We must, therefore, look to the legislative history and the case law of other circuits for guidance.

There a split among the circuits as to the ensuing validity of actions in violation of an automatic stay and there is confusion in the use of the terms used to characterize the subsequent force and effect of these actions. The CFC decision is an exemplar of such confusion. Consequent actions have been characterized as void, voidable, or merely invalid. A majority of the circuits have held that actions taken in violation of the automatic stay are void.[11] The Fifth Circuit has repeatedly held that violations of the automatic stay are voidable.[12] Yet, the Sixth Circuit has characterized certain actions taken during the pendency of the stay as invalid and voidable.[13] Still other courts have concluded that actions in violation of the automatic stay are void, yet went on to recognize an equitable exception to the operation of the stay.[14]

Courts that have found actions in violation of the automatic stay to be void rely in part on *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 345, 84 L.Ed. 370 (1940) (Post-petition real property foreclosure action by a state court was found to be "not merely erroneous but ... beyond its power, void, and subject to collateral attack."). *Kalb* is the only case that is binding on this court. *Kalb*, however, can be distinguished because

---

**10.** An assessment, although only an accounting entry on the IRS ledgers, establishes a legal liability to pay a tax deficiency. A tax lien on the taxpayer's property arises from the assessment which permits the IRS to levy upon the property within ten days of the notice and demand. *See* 26 U.S.C. §§ 6321, 6322, and 6331(a).

**11.** The First, Second, Third, Ninth, Tenth, and Eleventh Circuits have all held that violations are void ab initio. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581 (9th Cir.1993), *Schwartz v. United States*, 954 F.2d 569 (9th Cir.1992); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371 (10th Cir.1990); *In re Ward*, 837 F.2d 124 (3d Cir.1988); *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.*, 835 F.2d 427 (2d Cir.1987); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982); *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir. 1982).

**12.** *See Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990); *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir.1989).

**13.** "We think that 'invalid' is a more appropriate adjective to use when defining an action taken against a debtor during the duration of the automatic stay. Like the word 'void,' 'invalid' describes something that is without legal force or effect. However, something that is invalid is not incurable, in contrast to a void action which is incapable of being ratified." *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir. 1993).

**14.** *See In re Calder*, 907 F.2d 953 (10th Cir.1990); *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984) ("debtor bears some responsibility for creating the problems" by "unreasonably and inexcusably delay[ing] asserting his claim"); *In re Smith Corset Shops*, 696 F.2d 971, 977 (1st Cir. 1982) (debtor remained "stealthy silent").

of changes in the Bankruptcy Code. *Kalb* was decided in 1940 when bankruptcy referees had the express statutory power only to modify or terminate the automatic stay. The power to annul the stay had not been authorized. It was not until 1978, with the passage of the Bankruptcy Reform Act, Pub.L. No. 95–598, 92 Stat. 2549, that the Bankruptcy Code included a provision authorizing the bankruptcy court to annul the automatic stay. *See Sikes,* 881 F.2d at 179 n. 2; *Easley,* 990 F.2d at 911. Therefore, *Kalb* no longer offers iron clad support for characterizing all actions in violation of the stay as void. These courts, holding actions in violation of the automatic stay void, also rely on the legislative history as discussed below.

Courts that have found actions in violation of the automatic stay voidable rather than void have held that "characterization of every violation of 11 U.S.C. § 362 (1988) as being absolutely void is inaccurate and overly broad." *Sikes,* 881 F.2d at 178. These courts have relied in part on 11 U.S.C. §§ 362(d) and 549 (1988) to support their conclusion. *See Sikes,* 881 F.2d at 178–79; *but see Schwartz,* 954 F.2d at 572 (holding that an assessment of § 6672 penalties in violation of the stay is void and rejected the "annulment" premise). In a majority of these cases, the rationale has been based on a court's power under § 362(d) to annul the automatic stay [15] or a trustee's duty under § 549 to bring an action to void an unauthorized transfer. These courts reason that the consequent validity of these actions, after being retroactively revived by the court, illustrates that violations of the stay are merely voidable and not void. This power to annul "permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay. Such actions would otherwise be void." 2 Collier on Bankruptcy § 362.07. "If we are to give effect to the statutory authority to annul a stay, such actions can only be de-

scribed as invalid and voidable, since void actions are incapable of later cure or validation." *Easley,* 990 F.2d at 910. The courts that have held violations of the automatic stay void, then finding an equitable exception, as did the CFC in this case, are really viewing actions taken in violation of the stay as voidable.

We agree with the Circuits that have held that it is inaccurate and overly broad to characterize every violation of § 362 as being absolutely void. We do not accept a general rule of "voidness" of all violations of the automatic stay nor base our inquiry into Congress' intent of the consequent nature of actions in violation of the automatic stay by relying on the interpretation of collateral sections of the Bankruptcy Code. Rather, we focus on the underlying policies of bankruptcy, the role of the automatic stay, specifically paragraph (6), and the nature of this tax assessment in this case and its effects on these policies.

While the automatic stay is "one of the fundamental debtor protections" of bankruptcy law, it is equally important to consider the nature of the action, here the assessment of a 100% penalty, and then, determine if the action frustrates the statutory purpose or underlying policies. If the assessment does not frustrate the purpose of the automatic stay and there is no indication from Congress that the action is void, then it should be merely voidable.

In bankruptcy, the fundamental policy of protecting the debtor from all collection efforts until discharge, as most often cited by courts, is supported in the legislative history as follows:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the

---

**15.** Section 362(d) provides in pertinent part:
On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. § 362(d) (1988).

debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6296–97.

The court in *Schwartz,* relying heavily on the policy considerations above in holding violations of the stay void, stated:

> In light of the automatic stay's purpose, the issue before us requires some analysis of the relevant policy considerations. Either the debtor must affirmatively challenge creditor violations of the stay, or the violations are void without the need for direct challenge. *If violations of the stay are merely voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions.* If violations are void, however, debtors are afforded better protection and can focus their attention on reorganization.
>
> Given the important and fundamental purpose of the automatic stay and the broad debtor protections of the Bankruptcy Code, we find that Congress intended violations of the automatic stay to be void rather than voidable. Nothing in the Code or the legislative history suggests that Congress intended to burden a bankruptcy debtor with an obligation to fight off unlawful claims. The position championed by the IRS in this case would impose severe hardships on debtors trying to regain their financial footing.

*Schwartz,* 954 F.2d at 571 (emphasis ours). Even though the facts of this case are similar to those in *Schwartz,* we believe that court took a myopic view of Congress' intent and did not point to any "burdens" placed on the bankrupt which would have violated the automatic stay's "fundamental purpose." The court in *Schwartz* did not go far enough; it

did not look to the effect this particular assessment would have on the bankrupt.

The legislative history refering to "assessments" in the Bankruptcy Reform Act of 1978 is very limited.[16] To fully appreciate the nature of the action of the assessment of a § 6672 penalty on the bankrupt, it is necessary to address the underlying procedure for assessment of taxes during bankruptcy and the effect of the automatic stay.

Generally, prior to making an assessment, the IRS must send a notice of deficiency to the taxpayer. 26 U.S.C. § 6213 (1988). Within 90 days, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. No assessment, levy or proceeding in court for collection of the deficiency may be initiated by the IRS until the 90–day period has expired. 26 U.S.C. § 6201 (1988). This period is tolled if the taxpayer files for bankruptcy.

A notice of deficiency gives rise to jurisdiction in the Tax Court to determine the correctness of the deficiency. What is unique about the Tax Court, is that the taxpayer need not pay the deficiency to have his day in court. If the taxpayer does not request a hearing in the Tax Court, he must generally pay the assessed amount in full prior to filing for an administrative refund or proceeding in district court.[17]

One of the fundamental purposes of the automatic stay is to ensure that all claims against the debtor will be brought in a single forum, the bankruptcy court. *Pettibone Corp. v. Easley,* 935 F.2d 120, 123 (7th Cir. 1991). The stay protects the debtor by allowing breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others. The automatic stay also preserves the taxpayer's right to proceed in the Tax Court by staying the

---

**16.** The following was adopted by both the Senate and House regarding the purpose of § 362(a)(6): [Paragraph 6] prevent[s] creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their

bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5836–37, 6298.

**17.** See note 8.

commencement or continuation of proceedings therein.

What is of particular importance in the case at hand is that the Tax Court has no jurisdiction over employment tax issues such as § 6672 penalties; therefore, the deficiency procedures set forth in 26 U.S.C. § 6213 *et seq.* do not apply. The bankrupt is not burdened by having to fend off the IRS in a different forum, notably the Tax Court. Additionally, district courts would not have jurisdiction over this matter because Bronson had not made payments toward the penalty that would qualify him to file for a refund. The only forum with jurisdiction over Bronson's tax matter was the bankruptcy court, the forum where a debtor seeks refuge during reorganization and liquidation. Furthermore, because the § 6672 penalty is nondischargeable in bankruptcy, the priority of the creditors is not relevant. Accordingly, the purposes of the automatic stay are not violated by this assessment.

To more fully understand the interaction of the policies of bankruptcy and tax we must consider the legislative history of the Bankruptcy Tax Act of 1980 together with the Bankruptcy Reform Act of 1978 that governs the automatic stay,[18] specifically, the sections relating to coordination of the Internal Revenue Code with bankruptcy court procedures. While not dispositive, these sections, in effect, are analogous to the case at hand. The following excerpts are in reference to 26 U.S.C. §§ 6213, 6503, 6871, and 7464.

> Under [old] present Federal income tax law (sec. 6871 of the Code) ... the Internal Revenue Service is authorized, on institution of a bankruptcy proceeding, immediately to assess any income tax liability against the debtor. The Service is not required to follow the normal procedure under which a deficiency notice is issued to the taxpayer and the taxpayer may challenge an asserted income tax liability in the US Tax Court without payment of the tax.
>
> . . . . .

New 11 U.S. Code section 505(a) continues the jurisdiction of the bankruptcy court to determine liability for a tax deficiency, regardless of whether it has been assessed, unless it has been adjudicated by a court of competent jurisdiction prior to filing of the bankruptcy petition.

. . . . .

The new statute authorizes the bankruptcy judge to lift the stay and permit the debtor to institute a Tax Court case. . . .

. . . . .

However, if the bankruptcy court does not lift the automatic stay, but instead itself decides the tax issue and (at the request of the Revenue Service or of the debtor) determines the debtor's personal liability for a nondischargeable tax, then the bankruptcy court's decision will bind both the individual debtor and the estate as well as the government.

Bankruptcy Tax Act of 1980, P.L. 96–589, *reprinted in* 1980 U.S.C.C.A.N. 7059–61. The stated reason for the change was:

> The committee believes that the provisions of the Internal Revenue Code relating to assessment and collection procedures should be coordinated with rules enacted in the new bankruptcy statute (P.L. 95–598) for determination of tax liabilities in bankruptcy cases.

*Id.*

In effect, the new Bankruptcy Tax Act gives the bankruptcy court the exclusive power to lift the stay to ensure that duplicate litigation, which occurred under the old law where the Tax Court maintained jurisdiction, is eliminated. The bankruptcy court, in lifting the automatic stay, allows the debtor to petition the Tax Court under § 6213 to determine the taxpayers liability. Alternatively, if the bankruptcy court does not lift the stay, it makes its own determination of the taxpayers liability upon request of the debtor or the IRS.

---

**18.** When the Bankruptcy Reform Act of 1978, P. Law 95–598, was under consideration by Congress, the bill contained specific provisions regarding all tax matters in bankruptcy. However, to ensure passage of the bill, the federal tax provisions were deleted. The Bankruptcy Tax Act of 1980 enacted provisions regarding federal tax matters in bankruptcy.

While the Bankruptcy Tax Act generally repealed the existing rule authorizing the IRS to immediately assess certain pre-petition tax deficiencies, it still allows immediate assessment in two situations. *See* § 6871, 26 CFR § 301.6871(a)–1.[19] Both exceptions reflect bankruptcy situations in which there is no need to require the Revenue Service to follow the normal deficiency notice procedure. As discussed above, there is no need to follow the normal deficiency notice procedure in assessing § 6672 penalties because the Tax Court has no jurisdiction over these assessments. Making an immediate assessment, one without the need for a notice of deficiency, places the case in the bankruptcy court and takes away the individual's right to seek review in the Tax Court. By its very nature, the § 6672 penalty assessment is under the jurisdiction of the bankruptcy court, not the Tax Court. Therefore, there is no other forum where Bronson would have to "fend off" this assessment, nor are there additional burdens placed upon him.

While not binding, the newly amended § 362 is instructive and consistent with our construction. We take judicial notice of the expansion in the law. The Bankruptcy Reform Act of 1994 amended 11 U.S.C. § 362(b)(9) to read as follows:

(9) under subsection (a), of—

. . . .

(D) *the making of an assessment* for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will *not be discharged* in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

H.Res. 5116, 103d Cong. 2nd Sess. 140 Cong. Rec. H10752, 10755 (daily ed. Oct. 4, 1994) (enacted) (emphasis ours).

This section expands the tax exception to the automatic stay that is contained in 11 U.S.C. 362(b)(9). This section will lift the automatic stay as it applies to a tax audit, a demand for tax returns, assessment of an uncontested tax liability, or the making of certain assessments of tax and issuance of a notice and demand for payment for such assessment. The language of this provision is only intended to apply to sales or transfers to the debtor. It has no application to sales or transfers to third parties, such as in sales free and clear of tax liens under section 363(f).

*Id.* at H10788.

In summary, the § 6672 penalty assessment does not frustrate the purpose, policies or objectives, as expressed by Congress, of the Bankruptcy Tax Act of 1980 or the Bankruptcy Reform Act of 1978. Moreover, Congress has now specifically exempted tax assessments from the automatic stay provision in the Bankruptcy Reform Act of 1994. Accordingly, we hold, as the CFC did in effect, that the assessment the IRS made against Bronson for the § 6672 penalties is voidable. We so hold not, as the CFC states, because Bronson's actions were sufficient to negate the policies of the automatic stay, but because the assessment itself does not violate the policies of the automatic stay. While we have not considered Bronson's actions dispositive on the consequent nature of the assessment, his actions indeed support the outcome here for the automatic stay is based on equitable as well as legal principles. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reported in* 1978 U.S.C.C.A.N. 6295.

 As the CFC held, Bronson did not make any attempt to invalidate the assessment or contest his liability in the bankruptcy proceeding. In bankruptcy court, a properly filed proof of claim constitutes prima facie evidence of the amount of taxes claimed. Administratively, the proof of claim acts as a notice and demand for payment. 26 CFR § 301.6871(b)–1(b). The burden is upon trustee or debtor to rebut the presump-

---

19. Section 6871 provides for immediate assessment in receivership proceedings or with respect to certain title 11 cases for taxes imposed by subtitle A or B or by chapters 41, 42, 43, 44. Section 6672 penalty assessments, however, are not included by the above subtitles or chapters and, therefore, are not covered by § 6871.

tion. Thereafter, the IRS has the burden of coming forward. Bankruptcy Rule 3001(f). Bronson did not contest the proof of claim nor has he contested his liability. He has only questioned the correctness of the amount assessed. On the contrary, Bronson affirmatively solicited the IRS to perfect a lien upon his property to satisfy the penalty. Accordingly, the force and effect of the assessment was preserved. Because the assessment was valid, there has been no overpayment.

All other arguments of the parties have been fully considered, but, in light of the above, these issues do not warrant discussion.

## CONCLUSION

We affirm the CFC's decision granting the government's motion for summary judgment and denying Bronson's cross-motion for summary judgment, thereby dismissing Bronson's complaint for a refund of penalties assessed pursuant to section 6672 of the Internal Revenue Code of 1986.

## AFFIRMED.

NIES, Circuit Judge, Additional Views.

I join Judge Rich in concluding that the assessment of the section 6672 penalty by the IRS, which violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, is voidable rather than void and that summary judgment was properly granted. In addition, it appears to me that this case was fully settled in accordance with the April 14, 1986, installment agreement for payment of the section 6672 penalty. Both parties relied on and benefitted from the settlement. Bronson acknowledged and discharged his obligations fully in accordance therewith after he had knowledge of a ground to challenge it. In my view, his arguments, at this late stage, over bankruptcy provisions do not provide a basis for reversal. Moreover, this alternative ground for affirmance would have to be considered.

MAYER, *Circuit Judge*, dissenting.

Because I believe actions of creditors which violate the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362 (1988 & Supp. V 1993), are void *ab initio,* I dissent. As recognized by the court, Congress delineated actions which violate an automatic stay, *id.* § 362(a), and also specified exceptions to it, *id.* § 362(b). Congress did not say, however, whether actions taken in violation of a stay would have any validity. In *Kalb v. Feuerstein,* 308 U.S. 433, 438, 444, 60 S.Ct. 343, 345, 348, 84 L.Ed. 370 (1940), the Supreme Court answered this question and decided that actions in violation of a stay are void *ab initio* and subject to collateral attack.

The foundation for *Kalb* has not changed and I do not so readily dismiss it as being displaced by subsequent changes in the Bankruptcy Code. I agree with the Ninth Circuit, coincidentally the circuit from which this case comes, in *Schwartz v. United States,* 954 F.2d 569 (1992), that the Bankruptcy Reform Act of 1978 is not an impediment to finding actions in violation of a stay void. In fact, the legislative history of the 1978 Act highlights the vital role the automatic stay plays in the Bankruptcy Code and is in complete accord with *Kalb. See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6296–6297. Because the Act did not affect *Kalb,* this court's result is contrary to the Supreme Court and the weight of subsequent authority. *Schwartz,* 954 F.2d at 572; *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372–73 (10th Cir.1990); *In re Ward,* 837 F.2d 124, 126 (3d Cir.1988); *In re 48th St. Steakhouse, Inc.,* 835 F.2d 427, 431 (2d Cir.1987); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982).