**Slip. Op. 01-132**

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

```
--------------------------------------------------- x
UNITED STATES,                        :

                    Plaintiff,        :         Court No. 97-09-01553

           v.                         :

WASHINGTON INTERNATIONAL              :
INSURANCE CO, surety for N&B
JEWELRY CORP.,                        :

                    Defendant.        :
--------------------------------------------------- x
```

[Each party's Summary Judgment Motion granted in part and denied in part.]

Decided: November 15, 2001

*Robert D. McCallum*, Assistant Attorney General, United States Department of Justice; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Civil Division, Commercial Litigation Branch *(Mikki Graves Walser)*; *Vickie Shaw*, Office of the Chief Counsel, United States Customs Service, of counsel, for Plaintiff.

*Sandler Travis & Rosenberg, P.A.*, *Gilbert Lee Sandler (Arthur K. Purcell), Kenneth Wolf* for Defendant.

## OPINION

**BARZILAY, JUDGE:**

### I. INTRODUCTION

This case is before the court on cross-motions for summary judgment. Plaintiff ("Customs") commenced this action pursuant to 28 U.S.C. § 1582(2) (1994) to recover unpaid interest from defendant Washington International Insurance Company ("WIIC" or "Washington International"). WIIC acted as surety for N&B Jewelry Corporation's ("N&B") imports between 1985 and 1992. In 1993, N&B filed for Chapter 11 bankruptcy protection. Customs demanded

from WIIC duty and interest payments owed on N&B's liquidated entries, alleging that WIIC was jointly and severally liable for these sums. Customs further alleges that because WIIC was dilatory in responding to repeated payment demands, WIIC is responsible for interest in excess of the bond limit on the delinquent duty payments. WIIC counters that it is not liable for any interest beyond the face of the bond because (1) absent its own misconduct, its liability to Customs is limited to the face amount of the bond, (2) Customs' prior debt collection policies and practices did not include assessing and collecting interest from sureties in excess of the bond limits, (3) Customs has failed to prove WIIC's actions were dilatory, and (4) Customs' post-bankruptcy liquidations violated the automatic stay provisions of 11 U.S.C. § 362 (1988).

## II. BACKGROUND

On August 7, 1985, N&B and Washington International executed continuous entry bond 108566135. The bond secured N&B up to $200,000 annually and was to remain in full force and effect for one year and in each succeeding annual period until terminated. Between 1987 and 1992, N&B made 331 entries that were secured by the bond. On June 9, 1993, N&B filed a Chapter 11 bankruptcy petition. Customs liquidated the 331 entries between August 30, 1991 and January 6, 1995 and assessed the additional duty owed on the entries.

Between November 1991 and January 1995, Customs issued payment demands on Washington International totaling $9,248,825.91 for the duty and interest owed on N&B's entries. Both N&B and WIIC filed protests against the demands. On February 14, 1997, Customs denied the majority of the protests and, on March 5, 1997, sent a follow-up letter to WIIC demanding payment of $8,495,821.43. By letter dated April 9, 1997, WIIC responded to Customs' demand

explaining that the amount demanded far exceeded WIIC's bond liability[1] and asserting that the liquidation of N&B's entries *after* N&B had filed for Chapter 11 protection was in violation of the automatic stay provisions of 11 U.S.C. § 362.  Additionally, WIIC recalculated the amount owed as the "full remaining bond liability on N&B Jewelry entries which were liquidated pre-petition [$454,937.56] plus 1/3 of the surety's maximum liability for potential duty plus interest [$137,334.00] for N&B Jewelry entries which Customs liquidated post-petition" and in an attempt to settle the matter, WIIC tendered a check for $592,271.56.  *Mem. of Law in Supp. of Def's Mot. for Summ. J.* (*"Def.'s Br."*) at 6.

In a letter dated April 28, 1997, Customs (1) formally rejected WIIC's offer, (2) recalculated the duty and interest allegedly owed to be $1,201,786.20, (3) applied WIIC's $592,271.56 tender to the recalculated amount, and (4) demanded payment of the remaining $609,514.64 balance.  On May 13, 1997, WIIC responded to Customs' demand in writing.  WIIC explained that the $609,514.64 demanded still far exceeded WIIC's bond liability; however, it offered to tender an additional $267,612.87 to settle the matter and avoid litigation.  Due to a clerical error, Customs did not acknowledge receipt of WIIC's payment.  On June 23,1997, WIIC resubmitted payment with an accompanying bond liability analysis.  WIIC explained that the payment included increased duties plus interest up to the limit of the bonds for the applicable periods and exhausted WIIC's liability for the periods covered by the continuous bond.  On June 27, 1997, Customs received WIIC's payment and responded on August 5, 1997, by demanding WIIC pay an additional $259,954.59.  On August 13, 1997, WIIC responded to Customs that the additional $259,954.59 demanded was interest in excess of its bond liability and challenged

---

[1]  For ten years at $200,000 per year the bond liability limit would have been $2,000,000.

Customs' calculation and apportionment of WIIC's previous payments. WIIC refused to pay the

demanded interest and Customs commenced this action.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." USCIT R. 56(c). Moreover, summary judgment is a favored procedural device "'to secure

the just, speedy and inexpensive determination of an action.'" *Celotex Corp. v. Catrett*, 477 U.S.

317, 327 (1986) (quoting FED. R. CIV. P. 1); *Sweats Fashions, Inc. v. Pannill Knitting Co*., 833

F.2d 1560, 1562 (Fed. Cir. 1987). Whether a disputed fact is material is determined by the

substantive law applicable to the issues in the case and whether the finding of that fact might

affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In

actions brought by the United States to recover monetary penalties "all issues, including the

amount of the penalty, shall be tried de novo." 19 U.S.C. § 1592(e)(1) (1994).

## IV. DISCUSSION

1. *The surety's liability to Customs is governed by the contractually agreed upon*
   *bond limit.*

To facilitate the protection of tariff revenue or to "assure compliance with any pertinent

law, regulation, or instruction" Customs may require the execution of a bond prior to the

importation of merchandise into the United States. 19 C.F.R. § 113.1 (2001). The full extent of

Customs' bond requirements are enumerated in 19 C.F.R Part 113, Subparts A-G. In a typical

import transaction the importer will secure the Customs bond through a surety. As explained by

WIIC, "[t]he surety is compensated to assume reasonable and ascertainable risks, but those risks

are controlled in large part by the penal amount of the bond, plus any controlling requirements."

*Def.'s Br.* at 12. The penal amount of the bond is the "bond limit" or "face amount" of the bond

and is set by Customs using the regulatory criteria specified in 19 C.F.R. § 113.13.[2]

   In the event that the importer defaults on duties owed on the imported merchandise,

Customs will seek payment from the surety that was the signatory to the Customs bond. It is well

established law that the scope of the surety's obligations are governed by the covenants in the

---

[2] § 113.13 **Amount of Bond**

> (b) *Guidelines for determining amount of bond.* In determining whether the amount of bond is sufficient, the port director or drawback office in the case of a bond relating to repayment of erroneous drawback payment (see § 113.11) should at least consider:
>
> (1) The prior record of the principal in timely payment of duties, taxes, and charges with respect to the transaction(s) involving such payments;
>
> (2) The prior record of the principal in complying with Customs demands for redelivery, the obligation to hold unexamined merchandise intact, and other requirements relating to enforcement and administration of Customs and other laws and regulations;
>
> (3) The value and nature of the merchandise involved in the transaction(s) to be secured;
>
> (4) The degree and type of supervision that Customs will exercise over the transaction(s);
>
> (5) The prior record of the principal in honoring bond commitments, including the payment of liquidated damages; and
>
> (6) Any additional information contained in any application for a bond.

19 C.F.R. § 113.13(b)(1)-(6).

bond and that the bond must be interpreted in accordance with the statutes and regulations in effect when it was executed. *United States v. Kirkpatrick*, 22 U.S. 720, 732 (1824); *United States v. Utex Int'l*, 857 F.2d 1408, 1413 (Fed. Cir. 1988).  Normally, a surety is liable for any duties, fees and interest owed up to the face amount of the surety bond and any further liability for increased payment usually arises in a litigation context.

> Where a bond with a penalty is given for the performance of covenants, the recovery must be limited to the penalty, especially in the case of sureties.
>
> . . . .
>
> Sureties are only bound to the extent of their obligation expressed in their covenants, unless they are themselves guilty of default, or appear and make defense, in which case they become responsible for costs, and, in many cases, for interest by way of damages for the delay of payment.
>
> . . . .
>
> [T]he interest is added by way of damages for his own default, not as enlarging any degree his liability for the misconduct of the principal. . . . Interest may be received on the judgment, *transit in rem judicatam*, but not on the bond.

*United States v. Hills*, 4 Cliff. 618, 26 F. Cas. 322, 323-324 (C.C.D. Mass. 1878) (No. 15369) (citations omitted).  The Federal Circuit, based upon *Hills* and the Supreme Court's decision in *United States v. U.S. Fidelity & Guaranty Co.*, 236 U.S. 512 (1915), has held that this court may exercise its equitable power and award prejudgment interest beyond the face amount of the bond if the surety engaged in dilatory conduct.  *See also Insurance Co. of North America v. United States,* 951 F.2d 1244 (Fed. Cir. 1991); *United States v. Reul*, 959 F.2d 1572 (Fed Cir. 1992).  As stated in *Hills*,

> [s]ureties, if answerable at all for interest beyond the amount of the penalty of the bond given by their principal, can only be held for such an amount as accrued from their own default in unjustly withholding payment after being notified of default of

the principal. (Citations omitted).

26 F. Cas. at 323.

Customs argues that WIIC is liable for all of the duty, interest and fees on N&B's liquidated entries. Customs asserts that WIIC is liable for the duties, fees and interest beyond the face amount of the bonds securing the entries because WIIC was delinquent in responding to Customs' payment demands. Customs contends "pursuant to legislative mandate, duties and interest not paid in full within 45 days of liquidation or within 30 days of demand are delinquent and Customs is statutorily required to assess and collect interest on those unpaid duties, fees and interest." *Mem. in Supp. of Pl.'s Opp'n to Def's Mot. for Summ. J. and Cross-Mot. for Summ. J.* ("*Pl.'s Br.*") at 9-10. Customs relies on the legislative history of 19 U.S.C. § 1505 (1994)[3] to support its argument that if the statutorily mandated time for the payment of any duties, fees and interest is violated, the surety is in default of its bond obligation and is subject to liability beyond the face amount of the Customs bond. Customs asserts that even though WIIC formally protested the liquidation of the entries pursuant to 19 U.S.C. § 1514, the filing of the protest does not stay the statutorily mandated payment period.

> [A]s expressly provided in the legislative history of § 1505, Congress overturned the CCPA's [United States Court of Customs and Patent Appeals] decision in <u>Heraeus-Amersil</u> and expressly intended that additional or increased duties be promptly paid regardless of whether the protest period had expired or if a protest had been filed, or whether the time to appeal to the Court of International Trade had expired. Consequently, the "postponement" of payment during the pendency of a protest decision is not statutorily sanctioned; therefore, that "postponement" was neither lawful nor legitimate.

*Pl.'s Br. at 16-17.* Customs argues

---

[3] *See* statute *infra* note 4.

> [b]etween December 1991 and March 1997, Customs continuously demanded payment of the supplemental duties and interest which accrued pursuant to 19 U.S.C. § 1505(c) (1984) and 19 U.S.C. § 1505(d) (1993) for the entries covered by Washington International's bond.  However, even after the denial of its protest, Washington International failed to immediately pay the supplemental duties due pursuant to the terms of its bond and applicable Customs regulations.

*Pl.'s Br.* at 2.  Customs also cites to *Hills*, 26 F. Cas at 323-324, *U.S. Fidelity & Guaranty Co.*, 236 U.S. at 530-531, and *Insurance Co. of North America v. United States,* 951 F.2d 1244, 1246 (Fed. Cir. 1991), to support its position that if a surety unjustly withholds payment, it can be liable for interest that accrued beyond the face amount of the bond.  According to Customs, because WIIC failed to make timely payment in accordance with 19 U.S.C. § 1505, it breached the covenants of its bond agreement and is liable for duty, fees, and interest beyond the bond limit.

WIIC argues that the contractually agreed upon Customs bond governs the extent of its liability as surety.  WIIC asserts that, according to the terms of the bond, Customs is entitled to collect the duties, fees and interest associated with the liquidated entries; however, the maximum amount of its liability is limited by face amount of the bond.  WIIC concedes that the court does have equitable power to grant prejudgment interest in excess of the bond limit when the surety engages in dilatory conduct, but argues that Customs' reliance on this equitable remedy is misplaced.  WIIC contends that Customs is attempting to use a judicial remedy in an administrative proceeding.  In addition, WIIC argues that Customs has failed to prove that WIIC's actions were dilatory in any event.  WIIC asserts that there is a clear distinction between the "technical" delinquency that is caused by exercising its legal right to protest the liquidation and dilatory conduct that would extend its liability beyond the face amount of the bond. WIIC admits that Customs is allowed to recover interest that accrues during the pendency of a protest, however,

"Customs has no legal authority to assess and collect interest from the surety in an amount that *exceeds* the surety's bond limits." *Def's Reply Br. and Resp. to Pl.'s Cross-Mot. for Summ. J.* (*"Def's Reply Br."* ) at 3. WIIC claims that non-payment of Customs' demands during this period does not in and of itself constitute dilatory conduct that would allow Customs to extend WIIC's liability beyond the contractually agreed upon bond limits. Therefore, WIIC's payment to Customs following the denial of its protest and not before cannot be construed as a willful default on its obligations. Additionally, WIIC contends that the monies it paid to Customs were incorrectly applied. WIIC asserts that Customs applied its payments to principal first, which artificially inflated the amount of interest allegedly owed by WIIC on the liquidated entries and that this disagreement and the time involved in sorting it out also contributed to any delay in Customs receiving payment.

As a primary matter, the court finds unpersuasive Customs' argument that WIIC's failure to pay during the time its protests were pending constitutes dilatory behavior. It is true that 19 U.S.C. § 1505 requires that Customs receive payment for any duty, fees and interest owed upon liquidation. Section 1505 states in pertinent part:

> **(b) Collection or refund of duties, fees, and interest due upon liquidation or reliquidation.**
>
> The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation. Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.[4]

---

[4] The statute was amended in 1984 and again in 1993. The statute as amended in 1984 applies to those entries covered by bond years 1986 through 1990 and certain entries included in

19 U.S.C. § 1505(b). However, section 1505 neither changes the terms of the contractual agreement in the Customs bond nor eliminates the surety's ability to protest under 19 U.S.C. § 1514.

Customs' liquidation or reliquidation of an entry may be protested by a surety within "90 days from the date of mailing of notice of demand for payment against its bond." 19 U.S.C. § 1514(c)(3)(B). As both parties agree, interest does accrue on duties owed during the protest period. However, the interest charged during the protest period is not designed as a punitive measure. In essence, the reason for the interest is to take into account opportunity cost and the time value of money. Ultimately, the government will be made whole if the protest is denied and any increased duties are paid together with interest as assessed. Therefore, the surety's failure to pay the amount demanded by Customs during the pendency of the protest does not constitute dilatory conduct. The legal argument presented by Customs would penalize WIIC for nonpayment during the protest period. This directly contravenes the statutory intent of section 1520. "Customs will take no disciplinary action against importers solely on the grounds of failure to pay increased or additional duties on liquidation or reliquidation until a decision is reached on a

---

bond year 1990-1991. The statute in relevant part stated:

> **(c) Duties due upon liquidation or reliquidation; delinquency; interest**
>
> Duties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation, and unless payment of the duties is received by the appropriate customs officer within 30 days after that date, shall be considered delinquent and bear interest from the 15th day after the date of liquidation or reliquidation at a rate determined by the Secretary of Treasury.

19 U.S.C. § 1505(c) (1984).

protest filed under section 514."  H. R. Rep. No. 98-1015 at 67 (1984), *reprinted in* 1984

U.S.C.C.A.N. 4960, 5026.  An acceptance of Customs' argument would label as dilatory any

surety's failure to pay during the protest period.  Under this scheme, a surety's ability to protest

would be nullified because its right to withhold payment during the protest period would

constitute a willful default and, therefore, subject it to liability above the bond limit.  Similarly, if

the court were to allow Customs' argument to stand and hold sureties liable for conduct similar to

that at issue here, such sureties would be financially penalized in situations when, as here,

Customs takes years to act on the protests.  Such a result is beyond the current statutory scheme.

Of course, sureties know that by protesting they will be liable for any interest imposed on an

underpayment of duties if Customs denies the protest and that this interest could accrue from the

date of entry.  *See* 19 U.S.C. §1505(c).  They are equally aware that Customs cannot always act

expeditiously on a pending protest.  Now, however, their financial risk is capped by the

contractually agreed upon bond amount regardless of how long the protest is pending at Customs.

If that were not true, and it would not be under Customs' claims, it would allow Customs -- who

controls the timing of the protest period -- to benefit from its own delay by increasing the potential

financial liability of the surety.  It would also impermissibly blur the distinction between

administrative relief offered by the protest process and that available judicially only after all duties

have been paid.  *See* 28 U.S.C. § 2637.  Customs' interpretation of the import statutes and case

law ignores the "long-held tenet of statutory interpretation that one section of a law should not be

interpreted so as to render another section meaningless."  *Princess Cruises, Inc. v. United* States,

201 F.3d 1352, 1362 (Fed. Cir. 2000).

The court finds that the better reading of the applicable statutes and case law provides that

under 19 U.S.C. § 1505, WIIC is liable for interest that accrues during the protest period; however, its liability is capped at the contractually agreed upon bond limit. Furthermore, WIIC's nonpayment during the period after a proper protest is filed under 19 U.S.C. § 1514(c)(3) does not constitute dilatory conduct that would merit the imposition of prejudgment interest. Therefore, WIIC's liability to pay the increased amounts did not attach until the protests were denied by Customs.

Customs' regulations require the surety to: "[p]ay, as demanded by Customs, additional duties, taxes, and charges subsequently found due, . . . legally fixed, and imposed on any entry secured by this bond." 19 C.F.R. § 113.62 (a)(1)(ii). 19 U.S.C. § 1505(b) states that "duties, fees and interest determined to be due . . . are due 30 days after issuance of the bill for such payment" 19 U.S.C. § 1505(b). Here Customs' first demand after the protests were denied was sent March 5, 1997. Thus, pursuant to the language of the statute and regulation cited, WIIC could have been liable for payment April 4, 1997. However, these circumstances were unusual and the particular facts of this case do not support Customs' contention that WIIC was dilatory in responding to Customs' demands. Customs' follow up letter demanded that WIIC pay $8,495,821.43 for the duty and interest owed on the imported merchandise. However, that amount far exceeded the $200,000 per period bond limit contractually agreed upon in the Customs bond which would have totaled $2 million dollars. It is unreasonable to expect that WIIC would have immediately processed a check for that amount and sent it to Customs by return mail. On April 9, 1997, just one month after Customs' letter, WIIC did respond to the demand and tendered $592, 271.56 in an attempt to settle the matter. In its response letter dated April 28, 1997, Customs recalculated the alleged duty and interest owed by WIIC to $1,201,786.20. It then deducted the tendered

amount from that total, and demanded WIIC pay the remaining $609,514.64.

Customs' recalculation of WIIC's alleged liability is consistent with a course of negotiation between the parties designed to lead to an amount both could support. Thus, the almost two months in between letters led to Customs' significant $7,294,035.23 reduction in its original demand. On May 13, 1997, WIIC responded in writing to Customs' "new" demand by again asserting that the $609,514.64 far exceeded its bond liability, but offered $267,612.87 to settle the matter. Due apparently to Customs' clerical error, WIIC resubmitted the $267,612.87 on June 23, 1997. On August 5, 1997, Customs applied the $267,612.87 to WIIC's balance and demanded an additional $259,954,59.

WIIC's actions were not dilatory so as to expose it to liability beyond the bond. WIIC never disclaimed its liability as surety, but did seek to clear up the confusion surrounding the amount it actually owed.[5] There were several confusing issues identified, besides the central one of whether WIIC could be charged for amounts over the bond limit, including whether Customs had calculated the proper amount of interest owed. WIIC and Customs were engaged in a continuing dialogue to determine the correct amount. Customs, initially, greatly inflated the

---

[5] WIIC's obligations as surety are analogous to an insurer's obligations to an insured. Under the "good faith standard", an insurer may be held liable for amounts above the policy limits if it in "bad faith" withholds payment of a claim. *See* Eric Mills Holmes & Mark S. Rhodes, *Appleman on Insurance* § 8.7 at 425 (2d ed. 1996) (stating "[t]he insurer is held liable to pay a judgment or claim above the insurance policy's monetary limits (monetary cap) because the insurer has, in bad faith, breached its obligation to indemnify.") However,

> "[u]nder this standard an insurer need only act upon reasonable grounds in denying or delaying payment or in refusing to defend or in the claims process or in settlement negotiations. For example, a good-faith refusal to pay means that the insurer has reasonable grounds or probable cause in law or fact or both to reject the claims.

*Id* at 423.

amount owed and then responded to WIIC by changing the amount demanded several times. By engaging in a dialogue with Customs over the amount owed and by tendering some payment only a month after Customs' first demand, WIIC did not unjustly withhold payment and, therefore, cannot be held liable for an amount over the bond limit.[6]

   2.   *The filing of N&B's Bankruptcy Petition does not automatically stay Customs' claim against WIIC.*

The parties agree that Customs liquidated certain entries after N&B had filed a Chapter 11 bankruptcy petition on June 9, 1993, pursuant to 11 U.S.C. § 1101 (1988), and that these entries were secured by the continuous bond covering imports between September 1989 and September 1991. Despite the protection offered by the bankruptcy petition, Customs liquidated the entries and demanded payment from WIIC in accordance with 19 U.S.C. § 1505.

Customs presents three arguments to support its claim that liquidation of the entries did not violate the automatic stay protection of 11 U.S.C. § 362. First, Customs argues that liquidation is not an action to collect a claim against the debtor. Second, Customs contends that the automatic stay does not apply to sureties, guarantors, and co-obligors. Third, Customs asserts that the bond agreement signed by WIIC expressly states that N&B and Washington International are jointly and severally liable for any additional duties, taxes, and charges on entries secured by the bond and, therefore, WIIC's liability is primary and independent of N&B's.[7]

----

   [6] As Customs has failed to prove WIIC's action in this case constituted dilatory behavior, the court need not address WIIC's claim that Customs violated its own regulation in order to maximize the interest it could capture above the bond amount.

   [7] As discussed *infra* footnote 13, the joint and several language first appears after the issuance of a Treasury Decision in 1988. Therefore, at least for entries covered by bonds written before 1988 there may be some question that WIIC is primarily liable. However, this does not

WIIC argues that Customs' liquidation of the entries after the filing of the Chapter 11 bankruptcy petition violated the automatic stay provisions of 11 U.S.C. § 362.  To support its claim that the liquidations of the entries post-petition were in violation of the automatic stay, WIIC asserts that "[t]he automatic stay applies to bar Customs' liquidation of an importer's entries after the filing of a petition."  *Def.'s Br.* at 32.  Relying on *Apex Oil Co. v. United States Customs Service*, 122 B.R. 559 (Bankr. E.D. Mo. 1990), *aff'd in part and reversed in part*, 131 B.R. 712 (Bankr. E.D. Mo. 1991) and *United States v. Sentry Ins.*, 21 CIT 1073, 980 F. Supp. 481 (1997), WIIC contends that the liquidations of entries post-petition are void *ab initio* and therefore, without legal effect.  *Def's Br.* at 33.  Thus, because "the Customs Service did not, and to this day, has not lawfully liquidated those entries, there is no obligation due from the importer" or WIIC as surety of the importer.  *Id.* at 33-34.

WIIC has misread the applicable law.  The filing of a Chapter 11 bankruptcy automatically stays, with limited exception, all claims against the *debtor*.[8]  The main purpose of the automatic stay is to supply the debtor with time and to facilitate the proper distribution of the debtor's assets to creditors.  *See Credit Alliance Corp. v. Williams,* 851 F.2d 119, 121 ( 4th Cir. 1988).

> The automatic stay is one of the fundamental protections provided by the bankruptcy laws.  It gives the *debtor* a breathing spell from his creditors. . . . It permits the *debtor* to attempt a repayment or reorganization plan, or simply to be

---

affect WIIC's liability as guarantor which it willingly undertook by executing the bonds and agreeing to act as surety for N&B.

[8]  Pursuant to 11 U.S.C. § 362(a), "[e]xcept as provided in subsection (b) of this section, a petition filed under 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970. . . operates as a stay. . . ."  As provided in section 362(b) of the Bankruptcy Code the automatic stay will not discontinue actions against the debtor regarding, *inter alia,* criminal proceedings, alimony payments, and notice of tax deficiency.  *See* 19 U.S.C. § 362(b)(1)-(16).

relieved of the financial pressures that drove him into bankruptcy.

*Id*. (quoting S. Rep. No. 95-989, at 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41; H.R. Rep. No.95-595, at 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97 (emphasis added). However, as a general rule, the automatic stay provision of section 362 is for the sole benefit of the debtor.[9] "Once a petition in bankruptcy has been filed, 11 U.S.C. § 362(a)(6) (1988), the 'automatic stay' provision, bars assessment against the bankrupt of any claim that arose before the commencement of the bankruptcy proceeding."[10] *Bronson v. United States*, 46 F.3d 1573, 1577 (Fed. Cir. 1995); *Seiko Epson Corp. v. Nu-Kote Int'l., Inc.*, 190 F.3d 1360, 1364 (Fed. Cir 1999) ("The automatic stay provision of the Bankruptcy Act is designed to shield the debtor from burdens of litigation during the process of bankruptcy.") (Citation omitted). A claim

---

[9] The courts have established exceptions to this general rule when extraordinary circumstances exist.

> The courts have carved out limited exceptions to this general rule where: (1) "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S. Ct. 251, 93 L.Ed.2d 177 (1986); *In re Circle K Corp.*, 121 Bankr. 257, 259 (Bank. D. Ariz. 1990); *In re Family Health Service*, 105 Bankr. 937, 943 (Bankr. C.D. Cal. 1989), or (2) extending the stay against codefendants "contributes to the debtor's efforts of rehabilitation." *Matter of S.I. Acquisition*, 817 F.2d 1142, 1147 (5th Cir. 1987). (Citations omitted).

*United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491, n. 3 (9th Cir. 1993).

[10] 11 U.S.C. 101(5)(A) defines a claim as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."

brought against the debtor in violation of the automatic stay renders the action void or voidable.[11]

Other parties, such as unsecured creditors, may indirectly benefit from the automatic stay;

however, the purpose of the automatic stay is not to insulate other parties, such as *codebtors* and

*guarantors*, from the prosecution of claims. *See United States v. Dos Cabezas Corp.,* 995 F.2d at

1491*,* n. 3 (citing *Croyden Assoc. v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992), *cert denied*,

507 U.S. 908 (1993); *Matter of James Wilson Assoc.*, 965 F.2d 160, 168 (7th Cir. 1992); *Maritime*

*Elect. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991); *Matter of Lockard*, 884

F.2d 1171, 1177-79 (9th Cir. 1989)). The court in *Seiko* explained,

> [i]n cases involving multiple parties or multiple claims, the courts have "diaggregated" the proceedings so that claims against the co-defendants who are not under the protection of the bankruptcy court may go forward, as well as claims for which stay is unnecessary to protect the debtor. [sic] (Citation omitted).
>
> . . . .
>
> It is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor "even if they are in similar legal or factual nexus with the debtor."

*Seiko*, 190 F.3d at 1364 (quoting *Maritime Elect. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205

(3d Cir. 1991). Similarly*,* the court in *Lockard* stated:

---

[11]  11 U.S.C.§ 362(a)(6) states the automatic stay applies to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." There is a split among the circuits regarding the legal consequence of an action brought in violation of the automatic stay. *See Bronson*, 46 F.3d at 1577 (stating "[w]hile Congress specified what actions violate an automatic stay as well as exceptions under § 362(b), the consequent validity of the violative actions are not statutorily defined.") The Federal Circuit and Fifth Circuit have ruled that violations of the automatic stay are voidable, while the First, Second, Third, Seventh, Ninth, Tenth and Eleventh Circuits have ruled that violations of the automatic stay are void. *See In Re Carpio*, 213 B.R. 744, 749 (Bankr. W.D. Mo. 1997) (citing the respective Circuits' holdings regarding the legal consequence of an action brought in violation of an automatic stay.)

> The basic difference is in the party, the contractor or the surety, who puts its property directly at risk of liability to creditors in the event of nonpayment by the contractor. As Lockard himself acknowledges, a fundamental purpose of the bankruptcy proceeding is to 'throw a blanket of protection on all the property of the debtor.' *See* 8 C.J.S. *Bankruptcy* § 140 (1956). In the usual case it is unnecessary, and would be unfair to creditors, similarly to shelter the property of sureties who have undertaken obligations for the benefit of those creditors. (footnote omitted).

*Lockard*, 884 F.2d at 1178. Thus, the automatic stay protection afforded N&B does not extend to nullify Customs' ability to liquidate the entries and pursue its claims against WIIC. As the Ninth Circuit concluded in *Dos Cabezas*:

> [t]he Bankruptcy Code contemplates that creditors will be able to proceed against the guarantors and codebtors notwithstanding the automatic stay. *Credit Alliance Corp. v. Williams* , 851 F.2d 119, 121 (4th Cir. 1988). Sections 502(e) and 509 restrict the right of codebtors and sureties to file claims for reimbursement or contribution against the bankrupt debtor. Under this scheme, a "surety or codebtor is not permitted to compete with the creditor he has assured until the assured party's claim has been paid in full." *Id.* (citations omitted).

*Dos Cabezas Corp.,* 995 F.2d at 1492. Therefore, extending the benefit of the automatic stay to a guarantor or codebtor, absent a showing of extraordinary circumstances, would contravene Congressional intent.

WIIC's reliance on the *Apex* and *Sentry* cases is similarly misplaced because the factual circumstances are clearly distinguishable.[12] WIIC is neither the *debtor* nor has N&B's duty payment been satisfied; therefore, the automatic stay provision of 11 U.S.C. § 362 does not shield WIIC from Customs' claims.

The continuous entry bond that was executed governs WIIC's liability. On the reverse

---

[12] In *Apex,* the court held that Customs' post-petition liquidation and subsequent claim *against the debtor* Apex, constituted a violation of the automatic stay. *Apex,* 122 B.R. at 567 (emphasis added). In *Sentry*, the court held that since Customs' claim against the debtor had been fully satisfied by the debtor-in-possession, the surety, Sentry Insurance, was not the liable for any alleged interest payment deficiency. *Sentry*, 980 F. Supp. at 484.

side of the bond under the heading EXPLANATIONS AND FOOTNOTES, the bond states "[f]or

all bond coverage available and the language of the bond conditions refer to Part 113, Subpart G,

Customs Regulations."  This clause in the continuous bond contract specifically incorporates the

express language of  19 C.F.R § 113 Subpart G into the continuous bond agreement.  The

pertinent part of 19 C.F.R. § 113.62 (1989) states:

> (a) *Agreement to Pay Duties, Taxes, and Charges*.  (1) If merchandise is imported and released from Customs custody or withdrawn from a Customs bonded warehouse into the commerce of, or consumption in, the United States, the obligors (principal and surety, jointly and severally) agree to:
>
> . . .
>
> (ii) Pay, as demanded by Customs, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond.

19 C.F.R § 113.62 (a)(1)(ii) (1989).  The express language of the bond contract situates WIIC as

jointly and severally liable for duties owed on the imported merchandise.  Joint and several

liability

> [d]escribes the liability of copromisors of the same performance when each of them, individually, has the duty of fully performing the obligation, and the obligee can sue all or any of them upon breach of performance.  A liability is said to be joint and several when the creditor may demand payment or sue one or more of the parties to such liability separately, or all of them together at his option.  A joint and several bond or note is one in which the obligors or makers bind themselves both jointly and individually to the obligee or payee, so that all may be sued together for its enforcement, or the creditor may select one or more as the object of his suit.

BLACK'S LAW DICTIONARY 837 (6th ed. 1997).  Normally a surety is secondarily liable; however,

in this instance, WIIC is co-obligor with primary liability.  In Treasury Decision 88-72, 53 Fed.

Reg. 45901, ("T.D. 88-72") the Customs Service clarified a surety's liability under a continuous

bond agreement by amending 19 C.F.R.§ 113.62.[13]  "Adding the [joint and several] language to

the bond conditions will minimize the chance of obligors challenging separate liability to

Customs." T.D. 88-72 at 45902.   Thus, even though N&B filed for bankruptcy protection, WIIC

remains primarily liable as co-obligor of the bond because it agreed to undertake primary liability

when it executed the Customs bond.  In addition, as guarantor and surety WIIC cannot rely on the

automatic stay.

## V.  CONCLUSION

For the foregoing reasons, the court holds that Plaintiff's Motion for Summary Judgment

is granted in part in that the protections of the bankruptcy petition filed by the importer during the

administrative process below do not shield the surety from its liability for unpaid Customs duties

---

[13]  T.D. 88-72 helped clarify the major changes instituted by Treasury Decision 84-213, 49 Fed. Reg. 41152 ("T.D. 84-213").  As explained in T.D. 88-72:

> the Customs bond structure was extensively revised by [T.D. 84-213].
>
>  . . .
>
> A part of the foregoing involved incorporating specific bond conditions into Part 113. . . .  As a necessary part of this scheme, the bond conditions incorporated specific consequences of default provisions for failure to comply with the substantive requirements of the regulations and bond provisions.
>
> . . .
>
> Since then Customs has been undertaking an ongoing review of the revised bond structure. From this review process, it was discovered that certain clarifications in Part 113 are necessary.  This document [T.D. 88-72] amends the regulations concerning two of these clarifications.  One clarification concerns instruments of international traffic and the other concerns the *joint and several liability of obligors of bonds*. (Emphasis added).

T.D. 88-72 at 45901 (emphasis added).

it agreed to undertake by executing the import bonds securing the entries at issue in this case.

Defendant's Motion for Summary Judgment is granted in part in that it is liable to Customs in this

matter only up to the face amount of the several continuous import bonds written to secure those

entries.  Judgment will be entered accordingly.


Dated: _____                                                        _____
        New York, New York                                      Judith M. Barzilay
                                                                                  Judge