**Slip Op. 13-1**

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

UNITED STATES OF AMERICA,                 :

            *Plaintiff,*        :

            v.           :

MILLENIUM LUMBER DISTRIBUTION CO.  :
LTD. and XL SPECIALTY INSURANCE
COMPANY,                     :

          *Defendants.*    :

_____

                              Court No. 06-00129

XL SPECIALTY INSURANCE COMPANY,   :

          *Cross-Claimant,*  :

            v.           :

MILLENIUM LUMBER DISTRIBUTION CO.  :
  LTD.,

                     :

          *Cross-Defendant.*

_____

[Granting Plaintiff's Cross-Motion for Summary Judgment; Denying Defendant Millenium's Motion for Summary Judgment; Denying Defendant XL's Motion for Summary Judgment]

Dated: January 2, 2013

Aimee Lee, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, New York, argued for Plaintiff. With her on the brief were Tony West, Assistant Attorney General, and Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Christopher Shaw, Office of the Assistant Chief Counsel, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, of New York, New York.

Joel R. Junker, Joel R. Junker & Associates, of Seattle, Washington, argued for Defendant Millenium Lumber Distribution Co. Ltd. With him on the brief was William N. Baldwin.

T. Randolph Ferguson, Sandler, Travis & Rosenberg and Glad & Ferguson, P.C., of San Francisco, California, argued for Defendant XL Specialty Insurance Company. With him on the

brief was <u>Arthur K. Purcell</u>, of Sandler, Travis & Rosenberg, P.A., of New York, New York.

## OPINION

RIDGWAY, Judge:

The Government commenced this action against defendant Millenium Lumber Distribution Co. Ltd. and its surety, defendant XL Specialty Insurance Company, to collect $1,826,531.80 in liquidated damages. *See* Complaint ¶¶ 1, 21, 31, 42, 44. According to the Government, Millenium breached the terms of its customs bonds by not providing Customs with export permits required by the U.S.-Canada Softwood Lumber Agreement.[1] *See id*. ¶¶ 17-20, 28-31, 39-42. The Government contends that Millenium and XL are therefore jointly and severally liable for liquidated damages. *See id*. ¶¶ 10-11.

Now pending before the Court are Millenium's Motion for Summary Judgment, XL's Motion for Summary Judgment, and the Government's Cross-Motion for Summary Judgment.

In its Motion for Summary Judgment, Millenium claims that no breach of its customs bonds occurred and that there is thus no basis for Customs' assessment of liquidated damages. According to Millenium, Customs improperly reclassified the company's merchandise – which Millenium describes as "angle-cut softwood lumber" – without providing notice and an opportunity to comment. Millenium contends that its lumber is therefore properly classifiable as Millenium entered it, under a tariff heading that is not subject to the Softwood Lumber Agreement. *See*, *e.g.*,

---

[1]The U.S. Customs Service – formerly part of the U.S. Department of the Treasury – was transferred to the U.S. Department of Homeland Security as part of the Homeland Security Act of 2002. *See* <u>Bull v. United States</u>, 479 F.3d 1365, 1368 n.1 (Fed. Cir. 2007). The agency is now commonly known as U.S. Customs and Border Protection, and is referred to as "Customs" herein.

Memorandum of Points and Authorities in Support of Defendant Millenium's Rule 56 Motion for Summary Judgment ("Millenium's Motion") at 2, 3-4; *see generally* Reply in Support of Defendant's Motion for Summary Judgment ("Millenium's Reply Brief").

XL seconds Millenium's position, adopting and incorporating by reference Millenium's Motion for Summary Judgment and other papers in its own Motion for Summary Judgment. *See* Defendant XL Specialty Insurance Company's Rule 56 Motion for Summary Judgment ("XL's Motion") at 1-2; *see generally* Reply in Support of Defendant's Motion for Summary Judgment and Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("XL's Reply Brief").

The Government, in turn, contends that Millenium's failure to obtain export permits for its merchandise violated the terms of the Softwood Lumber Agreement and related Customs regulations, and put both Millenium and XL in breach of the applicable customs bonds, rendering the two jointly and severally liable for the assessed liquidated damages. *See*, *e.g.*, Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Cross-Motion") at 6, 9-10, 10-13; Reply Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply Brief") at 1-2.

The Government emphasizes that the instant action is a collection action, and argues that Millenium and XL are barred from pressing their notice-and-comment claim here in an attempt to mount an attack on what is, according to the Government, essentially a matter of tariff classification that has already been "fully and finally litigated." Pl.'s Cross-Motion at 7; *see also* Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Response Brief") at 5 (stating

that tariff classification of Millenium's goods has been "litigated . . . to judicial finality"). The Government further argues that – even if Millenium and XL were permitted to pursue their notice-and-comment claim in this collection action – they nevertheless could not prevail on the merits of that claim, because, according to the Government, the statute on which the claim is based did not apply in the circumstances of this case. *See generally* Pl.'s Response Brief at 18-29; Pl.'s Cross-Motion at 22-33; Pl.'s Reply Brief at 10-14.

Jurisdiction lies under 28 U.S.C. § 1582(2) (2000).[2] For the reasons that follow, Millenium's Motion for Summary Judgment must be denied, as must XL's Motion for Summary Judgment. The Government's Cross-Motion for Summary Judgment, on the other hand, must be granted.

## I. **Background**

Between late April 2000 and early January 2001, Millenium entered 168 entries of certain softwood lumber products – described by Millenium as angle-cut softwood lumber – into the United States from Canada. *See* Plaintiff's Statement of Undisputed Material Facts ("Pl.'s Statement of Facts") ¶¶ 1-4; Defendant's [XL's] Response to Plaintiff's Statement of Material Facts Not in Issue ("XL's Response to Statement of Facts") ¶¶ 1-4; [Defendant Millenium's] Rule 56 Statement of Material Facts Not in Dispute ("Millenium's Statement of Facts") ¶ 1; Plaintiff's Response to Defendant's [Millenium's] Statement of Material Facts Not in Issue ("Pl.'s Response to Millenium's

---

[2]All citations to federal statutes herein are to the 2000 edition of the United States Code. Similarly, all citations to federal regulations are to the 2000 edition of the Code of Federal Regulations.

Statement of Facts") ¶ 1.[3]  Millenium entered the lumber under heading 4418 of the Harmonized

Tariff Schedule of the United States ("HTSUS") (2000).  *See* Pl.'s Statement of Facts ¶ 5; XL's

Response to Statement of Facts ¶ 5.[4]

Millenium's entries were secured by three bonds issued by the company's surety – XL

Specialty Insurance Company, or its predecessor, Intercargo Insurance Company.  *See* Pl.'s

Statement of Facts ¶¶ 2-4; XL's Response to Statement of Facts ¶¶ 2-4.  As a condition of each

bond, Millenium and its surety agreed that they would comply with all customs laws and regulations,

including relevant provisions of the U.S.-Canada Softwood Lumber Agreement.  *See* Pl.'s Cross-

Motion at 2; *see also* 19 C.F.R. § 113.62(k) (incorporating requirements of Softwood Lumber

Agreement into customs bonds, as part of bond conditions).  Millenium and its surety also agreed

that they would be jointly and severally liable for liquidated damages in the event of a breach or

default.  Pl.'s Statement of Facts ¶ 14; XL's Response to Statement of Facts ¶ 14.

Following entry, Customs reclassified Millenium's merchandise under HTSUS heading

4407.  *See* Pl.'s Statement of Facts ¶ 6; XL's Response to Statement of Facts ¶ 6.[5]  Unlike

merchandise classified under heading 4418, certain merchandise falling within heading 4407 is

---

[3]Only XL responded to Plaintiff's Statement of Facts.  *See* XL's Response to Statement of Facts.  Because Millenium failed to respond, all facts set forth in Plaintiff's Statement of Facts are deemed admitted by Millenium.  *See* USCIT Rule 56(e)(2).

[4]Heading 4418 covers "[b]uilders' joinery and carpentry of wood . . . ."  Heading 4418, HTSUS.

All citations to the HTSUS herein are to the 2000 edition, which is identical to the 2001 edition in all relevant respects.

[5]Heading 4407 covers "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6mm."  Heading 4407, HTSUS.

subject to the Softwood Lumber Agreement, and requires export permits issued by the government of Canada for entry into the United States. *See* Pl.'s Statement of Facts ¶ 6; XL's Response to Statement of Facts ¶ 6; 19 C.F.R. § 12.140; 19 C.F.R. § 113.62(k).

Customs issued Notices of Action ("CF 29s") informing Millenium that the Softwood Lumber Agreement required the company to provide proof of issuance of the requisite export permits for its merchandise, and stating that, absent Millenium's submission of the necessary documentation, liquidated damages would be assessed. *See* Pl.'s Statement of Facts ¶¶ 7-9; XL's Response to Statement of Facts ¶¶ 7-9. However, Millenium failed to provide Customs with proof of the required permits. *See* Millenium's Statement of Facts ¶ 17; Pl.'s Response to Millenium's Statement of Facts ¶ 17. Customs therefore issued Liquidated Damages Notices to Millenium – with copies to XL – for all 168 entries. *See* 19 C.F.R. § 172.1(a);[6] Pl.'s Statement of Facts ¶¶ 12-13; XL's Response to Statement of Facts ¶¶ 12-13.[7] The Liquidated Damages Notices informed Millenium and XL of the amount of liquidated damages assessed. *See* Pl.'s Statement of Facts ¶ 13;

---

[6]19 C.F.R. § 172.1(a) provides:

> Notice of liquidated damages incurred. When there is a failure to meet the conditions of any bond posted with Customs, the principal shall be notified in writing of any liability for liquidated damages incurred by him and a demand shall be made for payment. The sureties on such bond shall also be advised in writing, at the same time as the principal, of the liability for liquidated damages incurred by the principal.

19 C.F.R. § 172.1(a).

[7]The Liquidated Damages Notices demanding payment from Millenium were issued "on or about" March 23, 2001, April 5, 2001, and September 21, 2001. *See* Pl.'s Statement of Facts ¶ 13; XL's Response to Statement of Facts ¶ 13; Complaint at Exhs. 6, 9, 12. XL received its formal demand for payment by letter dated May 23, 2005. *See* Pl.'s Statement of Facts ¶ 15; XL's Response to Statement of Facts ¶ 15; Complaint at Exh. 7.

XL's Response to Statement of Facts ¶ 13.

In the meantime, Millenium filed protests with Customs contesting the agency's classification of the company's merchandise. *See* Millenium's Motion at 2. In its protests, Millenium asserted, *inter alia*, that it had entered its merchandise under HTSUS heading 4418 in reliance on two prior Customs ruling letters – *i.e.*, NY B81359 and NY B88564 – which classified specified angle-cut softwood lumber components under that heading. *See* Millenium's Statement of Facts ¶ 6; NY B81359 (Feb. 6, 1997); NY B88564 (Sept. 9, 1997).

Customs denied Millenium's protests, and Millenium brought suit in this court challenging that denial. *See* HQ 965262 (July 10, 2002) (denying Millenium's protests); Millenium Lumber Distrib. Ltd. v. United States, Court No. 02-00595 (filed Sept. 12, 2002). Customs' classification determination was sustained by this Court, which, in turn, was affirmed on appeal. *See* Millenium Lumber Distrib. Ltd. v. United States, 31 CIT 575 (2007), *aff'd*, 558 F.3d 1326 (Fed. Cir. 2009) (holding that Millenium's merchandise is properly classified under HTSUS heading 4407).

In this related collection action, the Government seeks to recover liquidated damages from Millenium and XL for breach of the relevant customs bonds.

## II. **Standard of Review**

Under USCIT Rule 56(a), summary judgment is appropriate where "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. USCIT Rule 56(a); *see generally* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986).

In this case, there is no dispute as to any material fact. This matter is therefore ripe for summary judgment.

### III. Analysis

The thrust of Defendants' Motions for Summary Judgment is that Millenium and XL are not liable for liquidated damages because, according to Millenium and XL, Customs acted improperly in reclassifying Millenium's lumber under HTSUS heading 4407. *See generally* Millenium's Motion at 1-4, 8-19; Millenium's Reply Brief at 1-15; XL's Motion at 2 (adopting and incorporating by reference Millenium's Motion); XL's Reply Brief at 1-18. Specifically, Millenium and XL contend that Millenium's angle-cut lumber was identical to that described in two Customs ruling letters – *i.e.*, NY B81359 and NY B88564 – which the agency issued prior to Millenium's importations and which classified the lumber there in question under HTSUS heading 4418. *See*, *e.g.*, Millenium's Motion at 1; XL's Reply Brief at 7-8; NY B81359; NY B88564. Millenium and XL maintain that Customs therefore violated 19 U.S.C. § 1625(c)(1) when the agency reclassified Millenium's lumber under heading 4407 without first providing notice and an opportunity to comment. *See*, *e.g.*, Millenium's Motion at 2, 3-4; XL's Reply Brief at 4-7; 19 U.S.C. § 1625(c)(1).

Millenium and XL further assert that, because Customs reclassified Millenium's angle-cut lumber without providing notice and an opportunity to comment, Millenium's lumber must be classified under HTSUS heading 4418 (the heading under which Millenium entered the merchandise). *See*, *e.g.*, Millenium's Motion at 2, 3-4; XL's Motion at 2 (adopting and incorporating by reference Millenium's Motion). Because heading 4418 does not implicate the Softwood Lumber Agreement, Millenium and XL conclude that "no lumber export permits should

have been required" in this case, and that the Government's attempt to collect liquidated damages in the instant action has "no lawful basis." Millenium's Motion at 2; *see also* XL's Motion at 2 (adopting and incorporating by reference Millenium's Motion).

The statute on which Millenium and XL base their notice-and-comment claim provides, in relevant part:

(c) Modification and revocation

A proposed interpretive ruling or decision which would –

> (1)      modify . . . or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; . . .
>
> . . .

shall be published in the Customs Bulletin. *The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision.* After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c)(1) (emphasis added). The applicable regulations underscore that Customs ruling letters are applied "only with respect to transactions involving articles *identical* to the sample submitted with the [request for a ruling letter] or to articles whose description is *identical* to the description set forth in the ruling letter." 19 C.F.R. § 177.9(b)(2) (emphases added).

As discussed in greater detail below, the notice-and-comment claim asserted by Millenium and XL is lacking in merit. Defendants' Motions for Summary Judgment must therefore be denied. *See* section III.A.2, *infra*.

In its Cross-Motion for Summary Judgment, the Government asserts that Millenium's failure

to submit proof of the export permits required by the Softwood Lumber Agreement constituted a breach of the three customs bonds that secured the entries of lumber here at issue, and that Customs therefore properly assessed liquidated damages. *See generally* Pl.'s Cross-Motion at 9-10, 10-12; Pl.'s Reply Brief at 1-2. The Government further contends that Millenium and XL are jointly and severally liable for the liquidated damages that Customs assessed. *See generally* Pl.'s Cross-Motion at 9-10, 12-13; Pl.'s Reply Brief at 1-2.

As discussed in greater detail below, there is no dispute as to any material fact underlying the  Government's Cross-Motion for Summary Judgment, and the Government is entitled to judgment as a matter of law. The Government's Cross-Motion therefore must be granted. *See* section III.B, *infra*.

### A. Defendants' Motions for Summary Judgment

Millenium and XL argue that they are not liable for liquidated damages because, they maintain, Millenium was not legally required to obtain export permits for the subject entries of angle-cut lumber. Millenium and XL assert that Millenium's lumber was identical to the merchandise described in NY B81359 and NY B88564, which Customs had previously classified under heading 4418. Millenium and XL contend that Customs therefore violated the statute when the agency reclassified Millenium's merchandise under heading 4407 without providing notice and an opportunity to comment. Based on this notice-and-comment argument, Millenium and XL contend that Millenium's merchandise must be classified as entered, under heading 4418 – a tariff provision that is not subject to the Softwood Lumber Agreement, and thus does not require export permits. *See generally* Millenium's Motion at 1-4, 8-19; Millenium's Reply Brief at 1-15; XL's

Motion at 2 (adopting and incorporating by reference Millenium's Motion); XL's Reply Brief at 1-18.

For its part, the Government argues first that Defendants' notice-and-comment claim amounts to little more than a back-door challenge to the tariff classification of Millenium's lumber, and that – for a number of different reasons – such a claim cannot be asserted in this action. *See generally* Pl.'s Response Brief at 4-5, 6-17; Pl.'s Cross-Motion at 6-7, 13-21; Pl.'s Reply Brief at 3-10. The Government further argues that, even if the notice-and-comment claim were to be considered on its merits here, Millenium and XL could not succeed on the claim. *See generally* Pl.'s Response Brief at 5-6, 18-29; Pl.'s Cross-Motion at 7, 22-33; Pl.'s Reply Brief at 10-14.

As discussed below, the notice-and-comment claim that Millenium and XL seek to assert cannot carry the day.

### 1. The Government's Arguments Against Reaching the Merits of Defendants' Notice-and-Comment Claim

The Government contends that Millenium and XL are not permitted to raise their notice-and-comment claim in the instant action, raising four arguments to that effect.

The Government's principal argument is that the notice-and-comment issue "goes directly to the issue of [the tariff] classification" of the merchandise in question, and thus could properly be addressed only in the action that Millenium brought in this Court challenging Customs' classification of the merchandise at issue. Pl.'s Response Brief at 8; *see also* Pl.'s Reply Brief at 3 (arguing that, "[a]t its core," Defendants' notice-and-comment argument presents "an issue of classification," because "the end result is a determination of whether a particular classification

governs certain entries"); Millenium Lumber Distribution Ltd. v. United States, 31 CIT 575 (2007),

*aff'd*, 558 F.3d 1326 (Fed. Cir. 2009) (rejecting challenge to Customs' classification of Millenium's

merchandise under HTSUS heading 4407).

The Government maintains that Millenium could have raised and should have raised – and,

in fact, *did* raise – the notice-and-comment issue in the classification suit that Millenium brought

against Customs. *See* Pl.'s Response Brief at 8; *see also id*. at 3 (noting that Millenium included

notice-and-comment claim in its Complaint in classification action, but later abandoned that claim);

Millenium, 31 CIT at 578 n.6 (noting that Millenium raised notice-and-comment claim in its

Complaint, but then "abandoned [the] claim by not developing it for purposes of summary

judgment").[8]     According to the Government, "[the] proper classification of Millenium's

merchandise" was "fully and finally litigated" in the classification action.  Pl.'s Response Brief at

---

[8]Millenium does not dispute that it "abandoned" its notice-and-comment claim in its litigation challenging Customs' tariff classification of the merchandise at issue here.  *See* Millenium's Motion at 2 n.3.  However, Millenium contends that it "elected to raise . . . [its notice-and-comment] defense in this action" after the classification litigation concluded, when Millenium assertedly "determined . . . that resolution of the underlying classification requires consideration of the [notice-and-comment argument] . . . in this collection proceeding."  *Id*.  But that explanation is difficult to square with the course of events in other, very similar litigation.

Specifically, counsel for Millenium represented Canex – another importer of Canadian lumber – in litigation involving virtually the same arguments and essentially identical merchandise. *See* Canex Int'l Lumber Sales Ltd. v. United States, 34 CIT ____, ____, 2010 WL 2594993 (2010), *aff'd per curiam*, 432 Fed. Appx. 977 (Fed. Cir. 2011) (action by importer of Canadian angle-cut lumber, challenging Customs' tariff classification of importer's merchandise); United States v. Canex Int'l Lumber Sales Ltd., 35 CIT ____, ____, 2011 WL 3438870 (2011) (action by Government to collect liquidated damages from importer of Canadian angle-cut lumber).  If counsel in fact believes that the notice-and-comment claim is properly asserted in this collection action (and not in the classification litigation), it is unclear why – in Canex – counsel chose to litigate the notice-and-comment claim in the classification case, rather than the collection action.  *See* Canex, 34 CIT at ____, 2010 WL 2594993 at *2-3 (considering, and rejecting, importer's "notice-and-comment" claim in litigation challenging Customs' classification of angle-cut lumber from Canada).

5.  The Government concludes that Millenium thus "had the opportunity to raise [its notice-and-comment] claim" and that Millenium and XL "cannot raise [the notice-and-comment] issue[] here in an attempt to avoid liquidated damages." *Id*. at 5, 6; *see also*, *e.g.*, *id*. at 6-12; Pl.'s Cross-Motion at 7, 14-20; Pl.'s Reply Brief at 3-10. *But see* Millenium's Reply Brief at 1-3, 5-6; XL's Reply Brief at 1-6.

To further bolster its position that Millenium and XL are not permitted to argue notice-and-comment in this litigation, the Government also points to several variations of the doctrines of repose.  The Government first argues that the concept of claim preclusion underlying the doctrine of *res judicata* bars Millenium from raising the notice-and-comment argument in this action.  The Government asserts that, because the notice-and-comment issue could have been litigated in Millenium's classification action, *res judicata* bars Millenium from now raising the issue in this action.  Pl.'s Response Brief at 13-14 (*citing*, *inter alia*, Carson v. U.S. Dep't of Energy, 398 F.3d 1369, 1375 (Fed. Cir. 2005) (explaining that "[c]laim preclusion prevents parties from litigating issues that could have been raised in a prior action")); *see also*, *e.g.*, Pl.'s Response Brief at 5, 12-15, 16-17. *But see* Millenium's Reply Brief at 4.

The Government makes a similar argument based on the *res judicata* concept of issue preclusion, which holds that "issues which are actually and necessarily determined by a court of competent jurisdiction are conclusive in a subsequent suit involving the parties to the prior litigation." *See* Pl.'s Response Brief at 15 (*quoting* Mother's Restaurant, Inc. v. Mamma's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983)); *see also*, *e.g.*, Pl.'s Response Brief at 5, 12-13, 15-17. *But see* Millenium's Reply Brief at 4.  According to the Government, Millenium litigated the tariff

classification of its lumber and lost, and is "bound by that decision and cannot demand that the issue be decided over again."  Pl.'s Response Brief at 15  (*quoting* Mother's Restaurant, 723 F.2d at 1569).

In addition, the Government invokes *stare decisis* against both Millenium and XL, asserting that the decision of the Court of Appeals in the classification litigation closed the door to any attempt to re-litigate the tariff classification of Millenium's merchandise.  *See*, *e.g.*, Pl.'s Response Brief at 5, 17 (discussing Millenium Lumber Distrib. Ltd. v. United States, 558 F.3d 1326 (Fed. Cir. 2009) (affirming classification under HTSUS heading 4407)); Pl.'s Cross-Motion at 7, 21.  *But see* Millenium's Reply Brief at 4; XL's Reply Brief at 6-7.  The Government contends that the doctrine of *stare decisis* imposes on this court "an obligation to follow the [Court of Appeals'] classification decision which cannot be avoided," and concludes that it would be "improper for this action to encompass the issue of classification when an appellate court has pronounced the binding correct classification" of Millenium's lumber.  Pl.'s Response Brief at 17.

As explained below, however, even if their notice-and-comment claim were considered on its merits, Millenium and XL nevertheless still could not prevail.  There is therefore no need to consider in detail the substance of the Government's arguments (summarized above) that the notice-and-comment claim cannot properly be considered in this action.  No matter which party were to prevail as to each of the Government's four arguments, the outcome of this action would remain the same.

## 2. The Government's Arguments on the Merits of
Defendants' Notice-and-Comment Claim

Although the Government maintains that Millenium and XL are not permitted to raise their notice-and-comment claim in the instant action, the Government argues in the alternative that, even assuming that the notice-and-comment claim could be raised here, Millenium and XL could not prevail on the merits of that claim. *See generally* Pl.'s Response Brief at 5-6, 26-29; Pl.'s Cross-Motion at 7, 30-33; Pl.'s Reply Brief at 10-13.

In particular, the Government emphasizes that Millenium was entitled to rely on the prior Customs ruling letters – *i.e.*, NY B81359 and NY B88564 – only if Millenium's merchandise was (in the words of the applicable regulation) "identical to the description set forth in the ruling letter[s]." *See* Pl.'s Response Brief at 26-27 (*quoting* 19 C.F.R. § 177.9(b)(2)); Pl.'s Cross-Motion at 30-33 (same); Pl.'s Reply Brief at 10-11 (*citing* 19 C.F.R. § 177.9(b)(2)).  As the Government details at some length, Millenium cannot make that showing. *See* Pl.'s Response Brief at 26-29; Pl.'s Cross-Motion at 30-33; Pl.'s Reply Brief at 10-13.

For example, the merchandise described in NY B81359 was comprised of pieces to be "imported with a specific angle cut on one or both ends." NY B81359.  In the case at bar, the merchandise was cut at specific angles on one end only.  Millenium's Statement of Facts ¶ 2 (explaining that merchandise was cut with "individual angles . . . on one end"); Millenium's Motion at 4 (same); *id*. at Exh. C ¶¶ 3-4 (same).  Further, diagrams submitted with the merchandise in NY B81359 showed where the pieces at issue *would* fit in a completed roof truss. *See* NY B81359.  In contrast, the "representative drawings" provided by Millenium depict where the merchandise "could" fit in a series of truss designs; there was no showing that the particular entries were actually

destined for use as truss components.  Millenium's Reply Brief at Exh. A, p. 216 (deposition of

president of Millenium, taken as part of earlier classification action, explaining use of computer

software to show "where our truss components could fit" in truss designs); *see also* Millenium's

Reply Brief at 8-9 (stating that drawings were "representative" and intended to show how "pieces

could be used in a truss"); XL's Reply Brief at 12 (same).

     Nor was Millenium's merchandise identical to the merchandise in NY B88564.  For

example, in that ruling letter, "most pieces" of the merchandise were "cut at an angle other than a

90 degree angle *on both ends*."  NY B88564 (emphasis added).  But none of the merchandise at issue

here was angle-cut at both ends.  *See* Millenium's Statement of Facts ¶ 2; Millenium's Motion at 4;

*id*. at Exh. C ¶¶ 3-4.  Moreover, the merchandise in NY B88564 was accompanied by "illustrative

literature" showing in detail how all the pieces were "designed to fit together to make a roof truss."

NY B88564.  Millenium's "representative drawings," on the other hand, did not indicate how the

subject merchandise would fit together to make a roof truss.  *See* Millenium's Reply Brief at Exh.

A, p. 216; XL's Reply Brief at 12.

     In short, as the Government maintains, Millenium and XL have not shown – and cannot

show – that the merchandise at issue here was "identical to the description set forth" in either NY

B81359 or NY B88564.  *See* Pl.'s Response Brief at 26-29; Pl.'s Cross-Motion at 30-33; Pl.'s Reply

Brief at 10-13.  Accordingly, contrary to their assertions, Millenium and XL were not entitled to

notice and an opportunity to comment.  Nor do the two ruling letters cast any doubt on Customs'

classification of Millenium's merchandise here.

     The validity of the Government's position in this case is underscored by Canex, a case

involving the same competing HTSUS tariff headings, the same Customs ruling letters, and merchandise that was virtually identical to the merchandise at issue in this action. *See* Canex Int'l Lumber Sales Ltd. v. United States, 34 CIT ____, ____, 2010 WL 2594993 *4 (2010), *aff'd per curiam*, 432 Fed. Appx. 977 (Fed. Cir. 2011) (describing merchandise in that case as "identical in all pertinent respects to the merchandise at issue in [Millenium]").

In that case, the importer, Canex, entered its merchandise as truss components under HTSUS heading 4418. Canex, 34 CIT at ____, 2010 WL 2594993 at *1. Thereafter, Customs sent Canex a Notice of Action reclassifying the merchandise under heading 4407, liquidated the merchandise under that heading, and issued Notices of Liquidated Damages to the company. *Id.*, 34 CIT at ____, 2010 WL 2594993 at *2. Canex protested Customs' classification of its merchandise under heading 4407, and – after those protests were denied – brought a civil action challenging Customs' classification decision. *Id.*, 34 CIT at ____, 2010 WL 2594993 at *2.

Canex moved for summary judgment in its classification action, raising the exact same notice-and-comment claim that Millenium and XL have asserted here. Specifically, Canex relied on NY B81359 and NY B88564 to argue that it was entitled by statute to notice and an opportunity to comment, and that Customs' reclassification of its merchandise under heading 4407 therefore was not valid. *See* Canex, 34 CIT at ____, 2010 WL 2594993 at *2.

The Canex court noted that Canex could prevail on its notice-and-comment claim only if it could demonstrate that its lumber was identical to the lumber described in NY B81359 and NY B88564. *See* Canex, 34 CIT at ____, 2010 WL 2594993 at *2. Referencing the applicable federal regulation, the court emphasized that "a ruling letter classification applies only to articles that are

*identical* to those in the ruling letter." *Id.*, 34 CIT at \_\_\_\_, 2010 WL 2594993 at *2 (*citing* 19 C.F.R.

§ 177.9(b)(2)). Ultimately, Canex could not make the requisite showing. The court explained:

> Canex's merchandise was not identical to the merchandise in NY B88564 and NY B81359, which clearly were destined for specific use as part of a roof truss system. NY B88564 describes lumber with "[m]ost pieces" cut at an angle other than 90 degrees on both ends and states that each shipment was accompanied by illustrative literature showing how the pieces were designed to fit together to make a roof truss. . . . NY B81359 describes lumber which was cut to specific sizes and angles that would "depend on the size of the roof truss," and also was accompanied by diagrams that showed where the pieces would fit in a completed roof truss.
>
> *By contrast, the intended end use of Canex's lumber was uncertain*, as the pieces neither appeared to be roof trusses, nor were accompanied by any illustration or diagram that would indicate placement in a completed roof truss. Even in the occasional instances where Canex submitted a diagram, *Canex never located where the angle cut pieces would fit within the particular diagram.* Unlike the merchandise described in the two ruling letters, all of Canex's lumber was cut to a specific angle only on one end.

Canex, 34 CIT at \_\_\_\_, 2010 WL 2594993 at *3 (emphases added) (citations omitted).

The decision in Canex thus turned on Canex's inability to identify how its lumber would be

used following entry into the United States. The court highlighted the fact that the intended end use

of Canex's lumber was "uncertain" – that is, that the pieces of lumber did not appear to be roof

trusses, and that the diagrams provided did not show with certainty how the pieces would be placed

in a roof truss. The uncertainty surrounding Canex's lumber stood in stark contrast to the

merchandise in NY B81359 and NY B88564, which was "*clearly* . . . destined for specific use as

part of a roof truss system." Canex, 34 CIT at \_\_\_\_, 2010 WL 2594993 at *3 (emphasis added).

The court therefore concluded that Canex's notice-and-comment claim had no merit, because its

merchandise was not "identical" to that described in the ruling letters that Canex cited – a holding

that the Court of Appeals subsequently affirmed. *See id.*, 34 CIT at \_\_\_\_, 2010 WL 2594993 at *3,

*aff'd per curiam*, 432 Fed. Appx. 977.

Similarly, the nature of Millenium's merchandise was not fixed with certainty as "truss components." Millenium and XL strain to cast Millenium's merchandise as "identical" to the "truss components" described in the ruling letters that they cite. *See* NY B81359; NY B88564; Millenium's Motion at 1, 3-4, 5, 9-13; Millenium's Reply Brief at 6-12; XL's Reply Brief at 7-15. As discussed above, however, those efforts are in vain.

Indeed, both this court and the Court of Appeals have already determined that Millenium's merchandise was not identifiable, either in appearance or in intended use, as truss components. *See* Millenium Lumber Distrib. Ltd. v. United States, 558 F.3d 1326, 1330 (Fed. Cir. 2009) (stating that Millenium's "imported components are more raw material for trusses *or other purposes generally* than they are identifiable parts of a specific finished truss") (emphasis added); Millenium, 31 CIT at 580 (explaining that Millenium's merchandise was "not identifiable or fixed with certainty as unassembled pieces of wood trusses"). In other words, Millenium's merchandise was not "clearly . . . destined for specific use as part of a . . . truss system" – unlike the merchandise described in NY B81359 and NY B88564. Canex, 34 CIT at ____, 2010 WL 2594993 at *3.

There are no substantive grounds on which this case can be meaningfully distinguished from Canex, where this court and the Court of Appeals ruled decisively against virtually the exact same notice-and-comment claim that Millenium and XL assert here. The facts compel the same outcome. Because Millenium and XL have not demonstrated, and cannot demonstrate, that Millenium's merchandise was "identical" to that described in NY B81359 and NY B88564, their notice-and-

comment claim must fail, and their Motions for Summary Judgment must be denied.[9]

### B.  Plaintiff's Cross-Motion for Summary Judgment

In its Cross-Motion for Summary Judgment, the Government seeks to collect $1,826,531.80 in outstanding liquidated damages from Millenium and/or XL, asserting that they are jointly and severally liable for breach of the terms of the three customs bonds that secured Millenium's 168 entries of merchandise at issue.  *See* Pl.'s Cross-Motion at 13.  According to the Government, Millenium failed to meet its obligations under the Softwood Lumber Agreement, and Millenium and XL therefore violated Customs regulations relating to that agreement and breached the terms of the relevant customs bonds (because the requirements of the Softwood Lumber Agreement are

---

[9]Apart from its argument that Millenium cannot establish that its angle-cut lumber is identical to that described in the Customs ruling letters on which Millenium and XL rely, the Government further contends that Millenium and XL could not prevail on the merits of their notice-and-comment claim for a second, wholly independent reason.

Specifically, according to the Government, neither the CF 29s (Notices of Action) that Customs issued to Millenium nor the agency's subsequent liquidations of the relevant entries of lumber constituted "proposed interpretive rulings or decisions" within the meaning of 19 U.S.C. § 1625(c).  The Government asserts that the notice-and-comment provisions of the statute therefore are not implicated by the facts of this case.  *See*, *e.g.*, Pl.'s Response Brief at 5-6, 19-26 (*quoting* 19 U.S.C. § 1625(c)); Pl.'s Cross-Motion at 7, 22-30; Pl.'s Reply Brief at 10-11, 13-14.  *But see* Millenium's Motion at 3, 14-17; Millenium's Reply Brief at 12-15; XL's Reply Brief at 16-18.

The fact that Millenium cannot establish that its angle-cut lumber is identical to that in the Customs ruling letters that Millenium and XL cite obviates any need to here decide whether or not the CF 29s that Customs issued to Millenium and/or the subsequent liquidations constituted "proposed interpretive ruling[s] or decision[s]" within the meaning of the statute.  Even if they were determined to be such "proposed interpretive ruling[s] or decision[s]" (as Millenium and XL contend they are), it would nevertheless still be the case that Millenium and XL could not prevail on their notice-and-comment claim.  Accordingly, even a determination that the CF 29s and/or liquidations constituted "proposed interpretive ruling[s] or decision[s]" within the meaning of the statute would not alter the outcome in this action.

incorporated into customs bonds as part of the bond conditions). *See generally* Pl.'s Cross-Motion at 6, 9-10, 10-13; Pl.'s Reply Brief at 1-2; *see also* 19 C.F.R. § 12.140 (Customs regulations implementing Softwood Lumber Agreement); 19 C.F.R. § 113.62(k) (incorporating requirements of Softwood Lumber Agreement into customs bonds, as part of bond conditions).

Aside from the notice-and-comment argument pressed by Millenium and XL (and rejected above), there is no dispute here that Millenium's angle-cut lumber was properly classified under HTSUS subheading 4407.10.00. *See* Millenium, 31 CIT at 578, *aff'd*, 558 F.3d at 1331 (rejecting challenge to Customs' classification of subject merchandise under subheading 4407.10.00). There is similarly no dispute that, as classified under heading 4407, Millenium's merchandise was subject to the Softwood Lumber Agreement, and that Millenium therefore was required to obtain export permits from the government of Canada for all of the entries at issue. *See* 19 C.F.R. § 12.140(a) (requiring export permits for specified softwood lumber products from Canada that are classified under HTSUS subheading 4407.10.00). Nor is there any dispute that Customs properly notified Millenium that its merchandise was subject to the Softwood Lumber Agreement and that the company was required to obtain export permits under that agreement. *See* Pl.'s Cross-Motion at 11; Complaint at Exhs. 5, 11 (copies of Notices of Action ("CF 29s")).

It is further undisputed that Millenium did not obtain the requisite export permits, and that Millenium's failure to do so put both Millenium and XL in breach of the customs bonds, which incorporated an "[a]greement to ensure" the "issuance of softwood lumber export permit[s]" to Customs' satisfaction. 19 C.F.R. § 113.62(k); *see also* 19 C.F.R. § 12.140(a); Pl.'s Cross-Motion at 12. In addition, it is undisputed that the terms of those same bonds provide that Millenium and

XL are jointly and severally liable for any liquidated damages assessments, including any assessments as a result of any failure to comply with the requirements of the Softwood Lumber Agreement. *See* Pl.'s Statement of Facts ¶ 14; XL's Response to Statement of Facts ¶ 14; Pl.'s Cross-Motion at 12.

Finally, there is no dispute that Customs duly notified both Millenium and XL that liquidated damages would be assessed as a result of Millenium's failure to obtain the necessary export permits. *See* Pl.'s Cross-Motion at 13; Complaint at Exhs. 6-7, 9, 12 (copies of Liquidated Damages Notices, and letters to Millenium and XL dated May 23, 2005). Nevertheless, notwithstanding these facts, neither Millenium nor XL has paid the liquidated damages.

In sum, it is clear that the requirements of the Softwood Lumber Agreement and related regulations have not been satisfied. It is equally clear that Customs properly assessed liquidated damages against the relevant bonds, holding Millenium and XL jointly and severally liable. As such, there are no issues of material fact to preclude entry of judgment in favor of the Government. Moreover, under the circumstances, the Government is entitled by law to judgment in its favor. The Government's Cross-Motion for Summary Judgment therefore must be granted. Millenium and XL are jointly and severally liable for liquidated damages in the sum of $1,826,531.80, in accordance with Customs' demands.

### C. Prejudgment Interest

In addition to liquidated damages, the Government contends that Millenium and XL are jointly and severally liable for prejudgment interest at the rate established under 26 U.S.C. § 6621, from the dates of the Government's first demands for payment. *See* Plaintiff's Supplemental

Submission Concerning Interest ("Pl.'s Supp. Brief") at 2, 6, 9-10.

As the Government observes, "the long established rule . . . permits the United States to recover interest on money due to the government even in the absence of any statutory authorization for an award of pre-judgment interest." Pl.'s Supp. Brief at 3 (*quoting* United States v. Ford Motor Co., 31 CIT 1178, 1181 (2007)). The Court of Appeals has instructed that prejudgment interest is a matter of equity, and that whether to award such interest is a matter committed to the "sound discretion" of the trial court. United States v. Reul, 959 F.2d 1572, 1577 (Fed. Cir. 1992); *see* United States v. Imperial Food Imports, 834 F.2d 1013, 1016 (Fed. Cir. 1987).

XL asserts that, because "there is no statute in the instant case mandating prejudgment interest against a surety," the sole basis for such an award must be to compensate the Government for "undue delay or dilatory conduct" on the part of the surety – which, XL maintains, did not occur here. XL Specialty Insurance Company's Response to Plaintiff's Supplemental Submission Concerning Prejudgment Interest ("XL's Supp. Brief") at 4.[10] The linchpin of XL's argument is its claim that "public policy" precludes an award of prejudgment interest "where any delay in payment is the result of good faith disputes over the amount of money owed . . . , serious liability and due process concerns, ongoing settlement discussions conducted in good faith, or other reasonable grounds for postponement of payment." *Id.* Conspicuously absent from XL's argument, however, is any citation to authority to support its expansive "public policy" claim, or even any explanation as to how interest that is wholly compensatory (and in no way punitive or penal) can fairly be characterized as contrary to public policy.

_____

[10]Millenium elected not to brief the issue of prejudgment interest.

Nor has XL made any effort to place within its proposed construct the growing number of cases in which prejudgment interest has been awarded against sureties. *See*, *e.g.*, Ins. Co. of N. Am. v. United States, 951 F.2d 1244, 1247 (Fed. Cir. 1991) (affirming award of prejudgment interest against surety); Imperial Food Imports, 834 F.2d at 1016 (same); United States v. Canex, 35 CIT ____, ____, 2011 WL 3438870 *3-4 (2011) (awarding prejudgment interest against surety); United States v. Reul, 16 CIT 807 (1992) (same); United States v. Monza Automobili, 12 CIT 239, 242, 638 F. Supp. 818, 821 (1988) (same); United States v. Lun May Co., 12 CIT 123, 127, 680 F. Supp. 1573, 1577 (1988) (same); United States v. American Motorists Ins. Co., 11 CIT 944, 948, 680 F. Supp. 1569, 1573 (1987) (same); United States v. Cont'l Seafoods, Inc., 11 CIT 768, 775, 672 F. Supp. 1481, 1487 (1987) (same). Surely XL does not contend that, in each such case, the surety's delay in payment was attributable to bad faith and not to legitimate "disputes over the amount of money owed . . . , serious liability and due process concerns, ongoing settlement discussions conducted in good faith, or other reasonable grounds for postponement of payment." Under XL's theory, an award of prejudgment interest against a surety would be rare indeed.[11]

XL expresses particular concern that an award of prejudgment interest in this case will exceed the limit of one of its bonds, and states that "courts have historically respected the surety's right to limit its liability to the amounts demanded and to the penal limits of its bonds." *See* XL's Supp. Brief at 2-3, 7. However, XL fails to document this asserted "historic" trend. Instead, XL's argument – that an award of prejudgment interest beyond a surety's bond limits presupposes an

---

[11]XL makes the sweeping assertion that this court and the Court of Appeals "have declined to award [prejudgment] interest where the surety's delay in payment was not 'undue' or 'dilatory.'" XL's Supp. Brief at 2. But that statement simply cannot be reconciled with the case law.

unjust or unreasonable withholding of payment – is predicated largely on XL's reading of one particular case – Washington International Insurance. *See* XL's Supp. Brief at 2-4, 8 n.2; *see generally* United States v. Wash. Int'l Ins. Co., 25 CIT 1239, 177 F. Supp. 2d 1313 (2001).

XL contends that Washington International Insurance stands for the broad proposition that prejudgment interest in excess of a surety's bond limits is properly awarded only when "the withholding of payment . . . [is] *unjust*." XL's Supp. Brief at 2 (*citing* Washington Int'l Ins. Co., 25 CIT 1239, 177 F. Supp. 2d 1313). However, the Canex court made short work of that argument when XL raised it there. Canex, 35 CIT at ____, 2011 WL 3438870 at *3-4. The Canex court expressly rejected XL's reliance on Washington International Insurance as "misplaced," and explained that the case stands only for the proposition that "*during the protest period* the surety's liability cannot exceed the bond limit." Canex, 35 CIT at ____, 2011 WL 3438870 at *4 n.7 (emphasis added). The court concluded that, contrary to XL's assertions, "[d]ilatory conduct . . . is not required for a surety to be liable for prejudgment interest exceeding the amount of the bond." *Id*., 35 CIT at ____, 2011 WL 3438870 at *4. In weighing the equities, the Canex court explained, the key factor was that prejudgment interest would "compensate[] the Government for its inability to access the money it was owed" prior to the entry of judgment. *Id*., 35 CIT at ____, 2011 WL 3438870 at *3.

The Canex decision is in full accord with the Court of Appeal's endorsement of the principle of "complete compensation" in Princess Cruises. *See* Princess Cruises, Inc. v. United States, 397 F.3d 1358, 1368 (Fed. Cir. 2005). In that case, the court conceded that "[t]he degree to which the trial court is to balance equitable factors to determine whether to award prejudgment interest is not

easy to discern from the case law." Princess Cruises, 397 F.3d at 1368. However, the Court of Appeals found that, above all, "[p]rejudgment interest is an element of complete compensation." *Id*., 397 F.3d at 1368 (*quoting* West Virginia v. United States, 479 U.S. 305, 310-11 (1987)). In arriving at that conclusion, the Court of Appeals relied on a seminal Supreme Court case, in which the high court explained that the concept of "complete compensation" is part and parcel of the weighing of equities:

> As our prior cases show, a persuasive consideration in determining whether such obligations shall bear interest is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed. *And this Court has generally weighed these relative equities in accordance with the historic judicial principle that one for whose financial advantage an obligation was assumed or imposed, and who has suffered actual money damages by another's breach of that obligation, should be fairly compensated for the loss thereby sustained.*

Princess Cruises, 397 F.3d at 1368 (*quoting* Rodgers v. United States, 332 U.S. 371, 373-74 (1947)).

Here, absent an award of prejudgment interest, Millenium and XL will have enjoyed (in effect) a long-term "interest-free loan of the money" that has been due and owing to the Government. Imperial Food Imports, 834 F.2d at 1016 (*quoting* United States v. Goodman, 6 CIT 132, 140, 572 F. Supp. 1284, 1289 (1983)). And, by the same token, absent an award of prejudgment interest, the Government here will not be made whole for the injury that the liquidated damages are intended to redress. *See* West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987) (discussing role of prejudgment interest in compensating aggrieved party). Accordingly, hewing to the principle of "complete compensation," equity compels an award of prejudgment interest in this case, jointly and severally, against both Millenium and XL.

Notably, although XL disputes its liability for prejudgment interest, it does not contest the

rate of interest. Nor does XL dispute the Government's representation that such interest typically runs from the date of the first demand for payment. *See* Pl.'s Supp. Brief at 3. Because the liquidated damages here were "fixed with certainty" at the time Customs made its first demands for payment, prejudgment interest against Millenium is awarded at the rate established under 26 U.S.C. § 6621 from the dates of Customs' first demands on the company – March 23, 2001, April 5, 2001, and September 21, 2001, respectively. *See id.* at 6, 9; Complaint at Exhs. 6, 9, 12 (Liquidated Damages Notices dated March 23, 2001, April 5, 2001, and September 21, 2001). As for XL, prejudgment interest is awarded at the same rate from May 23, 2005 – the date of Customs' first demand on the surety. *See* Pl.'s Supp. Brief at 6, 9; Complaint at Exh. 7 (letter to XL, dated May 23, 2005).

## IV. **Conclusion**

For the reasons set forth above, the Government's Cross-Motion for Summary Judgment must be granted, and the Motions for Summary Judgment filed by Millenium and XL must be denied.

Judgment will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Decided: January 2, 2013
         New York, New York

# ERRATA

United States of America v. Millenium Lumber Distribution Co. Ltd. and XL Specialty Insurance Company, Court No. 06-00129, Slip Op. 13-1, dated January 2, 2013.


Page 3:      In line two of the second full paragraph, replace "related Customs" with "related customs".

Page 8:      In line nine of the second full paragraph, replace "XL's Reply Brief at 7-8;" with "XL's Reply Brief at 7-9;".

Page 20:     In line six of the indented paragraph, replace "Customs regulations" with "customs regulations".

Page 25:     In line one of the second full paragraph, replace "Court of Appeal's endorsement" with "Court of Appeals' endorsement".


January 23, 2013